**WOLF et al. v. UNITED GAS PUBLIC SERVICE CO.**

No. 9462.

Court of Civil Appeals of Texas.
San Antonio.
Dec. 12, 1934.

Rehearing Denied Jan. 23, 1935.

Lemuel H. Doty, of Gulfport, Miss., and Phelps & Phelps and R. S. Phelps, all of Laredo, for appellants.

Mann & Mann, of Laredo, and Baker, Botts, Andrews & Wharton, of Houston, for appellee.

SMITH, Justice.

Appellee, United Gas Public Service Company, is a public utilities corporation engaged in supplying natural gas to various communities, including the city of Laredo, where it operates under a franchise granted by the city to appellee's remote predecessor in 1905. Appellants, Bruno Wolf and George E. Reuthinger, partners, operate, and since 1922 have operated, a bakery in said city, "and in such business used gas for fuel, and in large quantities, which they purchased from the defendant and its predecessors."

By the terms of the franchise under which appellee is operating, the company was prohibited from charging consumers a rate in excess of $1 per 1,000 cubic feet of gas. By agreement made between the city and the gas company in 1921, however, the maximum rate fixed in the franchise at $1 was reduced to 75¢ per one thousand feet, and that restriction still prevails.

In 1924 appellee's predecessor in franchise adopted the following classifications of gas consumers, and schedules of gross rates per 1000 cubic feet ("M.C.F."): Domestic, 75 cents; hotels, restaurants, and bakeries, 60 cents; gas engines, 50 cents; boilers, brick kilns, etc., over 25 horse power, 25 cents.

In 1930 minor changes, not material here, were made, and in 1931 the consumers were reclassified and the gross rates applied as follows:

"Residential Natural Gas Service Rate
Schedule No. One
"Application of Schedule:

"This schedule is applicable to natural gas service for cooking, water heating, space heating, and other domestic appliance uses in residences, individual family apartments, and commercial establishments for which no specific schedule is provided." 75 cents per MCF.

"Commercial Natural Gas Service
"Application of Schedule:

"This schedule is applicable to natural gas service for hotels, restaurants and bakeries, as well as to central heating plants whose rated capacity does not exceed 25 boiler horsepower." 60 cents per MCF.

"Industrial Natural Gas Service
"Application of Schedule:

"This schedule is applicable to natural gas service for industrial establishments using furnaces, forges, etc., or to boiler installations having a rated capacity in excess of 25 horsepower." 25 cents per MCF.

Each schedule provided for a discount in case of prompt payment of bills.

During the period here involved, appellee placed appellants in the second, or "commercial," class, which included bakeries, and charged and collected from appellants, as well as all others in that class, the scheduled rate of 60 cents per MCF, subject to the prescribed discount. During that period appellants knew of the rate being charged them, but, while paying the bills as so rendered, were constantly protesting the rate as being excessive and discriminatory.

In September, 1933, appellants brought this action against appellee to recover the amount of the difference between the 60 cent rate they had paid from September 1, 1928, and the 25 cent rate, to which they claim they were entitled, aggregating the alleged total of $5,331.-93. At the conclusion of a trial before a jury, the trial judge discharged the jury, and rendered judgment denying any recovery to appellants.

Appellants' trial petition is quite lengthy, but in their brief they have sufficiently and accurately summarized the allegations in the petition, which we here adopt, as follows:

"Plaintiffs allege that the defendant (predecessors will be understood to be included) placed the plaintiffs arbitrarily in a classification with Hotels, Creameries, Restaurants and Bakeries and fixed the rate to be charged them for supplying them with gas at a gross rate of sixty cents per one thousand cubic feet for gas consumed, subject to a discount of ten per cent if bills were paid on or before a certain date.

"Plaintiffs allege that they are large users of gas; that no additional expense is placed upon the defendant for the service it furnishes to the plaintiffs; that plaintiffs do not take gas at what the defendant calls its 'peak hour,' but after the same, and in short, no reason exists why they should be charged a higher rate for gas than other members of the group or classification in which they have been placed arbitrarily by the defendant, but that, nevertheless, defendant continues to charge and collect from them for gas furnished at the rate of sixty cents per thousand cubic feet while it charges the Laredo Creamery Company and the Reuthinger (Mistletoe) Creamery, in the same classification as plaintiffs, a rate of twenty-five cents per thousand

cubic feet, with a discount of twenty per cent if paid on or before the 10th of the month following the month in which the service is rendered.

"Plaintiffs allege that before they entered the business of manufacturing bread, cakes, etc. and installing furnaces for the use of gas therein to supply heat to the ovens, that they discussed the rates which they would have to pay to defendant for the necessary supply of gas and were assured by the defendant and its manager and others connected with the defendant that they would be treated as the other members of the class into which their contemplated business had been placed by the gas company, and that they would be accorded fair and honest treatment and enjoy the same rate and privileges granted to the other class members; relying upon their representations and the promises to them made by the said gas company these plaintiffs bought and installed their furnaces, heating and warming equipment, mixers, sizers and the other equipment required to be installed in order that they might engage in the Bakery business; that shortly after they began the manufacture and sale of Bread, Cakes, Pies, etc., the gas company undertook to charge them, and did charge them, for a long time seventy-five cents per thousand cubic feet of gas consumed, said charge being subject to a small discount; that these plaintiffs registered a vigorous complaint as to the rate being charged them and were then and there promised an adjustment of the accumulated overcharge and a reduction in the rate to be charged them, by the said Walter W. Stein; that despite their protests the said gas company has continued to discriminate against them and that it now charges them gross sixty cents per thousand cubic feet of gas consumed as against a gross charge of twenty-five cents per thousand cubic feet of gas consumed to two members of the class to which these plaintiffs belong; plaintiffs claim that by reason of this discrimination and overcharge which they had to pay to continue their business and prevent the gas cut off these plaintiffs paid under protest the bills monthly as rendered by said defendant.

"Plaintiffs further alleged, 'That over ten (10) years ago when it was first brought to their attention that they were being discriminated against as to the rate being charged that they filed a vigorous and timely protest with the manager of the defendant company at its offices in Laredo, and advised him of the breach of duty to the public being practiced by his company and told him, the said manager, that from then on they were pay-

ing such charges under protest and made demand for an adjusted rate and a refund of the overcharges collected by the said company from these plaintiffs; that they were assured by the Manager of the Gas Company that these matters would be adjusted to the satisfaction of all parties concerned; that they relied upon these representations and continued to take gas from the mains of this defendant company; that the Defendant Company, despite protests and demands made upon it by these plaintiffs, does continue to discriminate against them and fails and refuses to refund them the amount, or any part of the amount, of the overcharge collected each month from them; plaintiffs claim that the amount they have been forced to pay as a discriminatory overcharge is the sum of Five Thousand Three Hundred and Thirty-one and 93/100 ($5,331.93) Dollars and from Sept. 1, 1928, to Nov. 1, 1933, an itemized statement of such overcharge is hereto attached, marked Exhibit "A" and made a part of this Second Amended Original Petition, which sum these plaintiffs claim is due them as actual damages and for money paid by way of overcharge by Plaintiffs during the period heretofore set forth and under protest.' "

Appellee's answer is summarized in appellants' brief as follows:

"The original answer of the defendant was filed on October 13, 1933, consisting of general and special exceptions, general denial, pleas of limitation of two and four years and specially answering allege that for a short time it (predecessors included) charged plaintiffs for gas furnished at the rate of seventy-five cents per one thousand cubic feet, less a discount of ten per cent if paid in ten days after bill rendered, and then placed plaintiffs in a class with hotels, restaurants and bakeries, at a rate of sixty cents per one thousand cubic feet consumed, with ten per cent discount and a minimum charge of $5.00, this class being known as commercial consumers; that another classification was known as industrial establishments, including users of furnaces and boiler installations in excess of 25 horse power, to which class gas is furnished at the rate of twenty cents net per one thousand cubic feet for the first ten million cubic feet per month, with lower rates for additional quantities; defendant alleges that the Reuthinger Creamery and the Laredo Creamery were first classified as commercial consumers, but when they installed boilers in excess of 25 horsepower, they were classified as industrial consumers and received the benefit of the lower rate charged by defendant for that classification. Defendant denies that plaintiffs are entitled to a lower rate than that charged them.'"

There seems to be much confusion among the parties as to the nature of this action, whether it is one for damages for unlawful discrimination or for overcharge for the gas furnished to appellants by appellee. Appellants in their supplemental brief, as well as in their oral argument, expressly and emphatically disclaim and deny that the suit is one for discrimination, and insist that it is one for overcharge. We think it clear that it is not an action for damages for unlawful discrimination, in which it is lacking in vital essentials not necessary to advert to here. This conclusion and their disclaimer, then, relegate appellants to whatever relief they may have shown themselves to be entitled to under their allegations of a cause for overcharge.

Appellants' contentions and complaints are somewhat obscured, both in the pleadings and the evidence. Some of the allegations in their trial petition are immaterial to the suit. Such are the allegations, for example, that, before installing their plant, appellants "discussed" with the gas company's manager "the rates they would have to pay," and were assured by him and the company that they "would be treated as the other members of the class into which their contemplated business had been placed by the Gas Company, and that they would be accorded fair and honest treatment and enjoy the same rate and privileges granted to the other class members"; that appellants "registered a vigorous complaint at the rate being charged them, and were then and there promised an adjustment of the 'accumulated overcharge and a reduction on the rate to be charged them"; that in response to appellants' protests they were assured by the manager that "these matters would be adjusted to the satisfaction of all parties concerned." All such allegations are futile, since they are too indefinite to show any contract or to add to appellee's inherent duties and obligations to appellants.

When those immaterial allegations are eliminated, as they must be, appellants' petition, when analyzed, presents the simple claim that appellee has charged appellants a greater rate per thousand cubic feet of gas than it charged others in the class to which appellee assigned them; or, specifically, that appellee had charged appellants a gross rate of 60 cents, less the prescribed discount, while at the same time charging the Laredo Cream-

ery and the Mistletoe Creamery a lower rate, to wit, 25 cents per thousand cubic feet, less the prescribed discount. The contention in appellants' petition is, not that the rate charged them is within and of itself unreasonably excessive, but, simply, that it is excessive only because it is greater than the rate charged the creameries. This is, then, the sum and substance of appellants' suit for overcharge, and this decision must rest thereon.

■ Appellants concede, specifically allege, that the rate exacted of them by appellee was that prescribed for "bakeries," which is concededly the business, and the only business, engaged in by them. They do not contend in their petition, by which they are here bound, that they are wrongfully classified as a bakery, or as "commercial," or that they are entitled to a lesser rate than that charged hotels and restaurants, with which they are classified by appellee. They simply alleged that appellee exacted of them a greater rate than the Laredo Creamery and the Mistletoe Creamery were required to pay, whereby the overcharge occurred; or, stated differently, that they were entitled to the same rate as those two creameries, and should recover as overcharge the amount they had paid in excess thereof. They do not deny, and the record affirmatively shows, that all other bakeries in Laredo, as well as all the hotels and restaurants (with which appellants were classified), were charged, and paid, the same rate exacted of appellants. These facts conclusively refute appellants' complaint that appellee charged them a different or greater rate than others with whom appellee classified them, and, this complaint failing, the claim of overcharge, based thereon, falls with it.

■ Appellants' complaint that appellee discriminated against them by charging the two named creameries a lesser rate than that charged appellants likewise fails with the proof that the creameries brought themselves within the "industrial" class by burning the gas, furnished it by appellee, in boilers "having a rated capacity in excess of twenty-five horsepower," which was shown to be an entirely different service than that furnished for use in baking ovens. In that connection it was shown that the named creameries were originally placed with appellants in the "commercial" class, and paid the rate appropriate thereto; that, in order to avail themselves of the specific rate applicable to 25 horse power boilers, they changed their installation to such boilers, and thenceforth took the appropriate rate.

The record further shows that, when appellants complained of the rate exacted of them, they were assured by appellee that they could have the cheaper rate by installing boilers, but declined to do so, presumably for the reason that boilers could not serve the purpose to which they put baking ovens.

■ Moreover, the record shows that the boiler service carries with it a stipulation that the company shall have the privilege of cutting off the service in emergencies which jeopardize the supply for domestic and commercial uses, whereas the service given appellants included no such reservation. This consideration was sufficient within itself to justify the cheaper rate. 34 Tex. Jur. p. 724, § 17; Wyman Pub. Utilities Corp. § 1240; Cock v. Marshall Gas Co. (Tex. Civ. App.) 226 S. W. 464; Elk Hotel Co. v. United Fuel Gas Co., 75 W. Va. 200, 83 S. E. 922, L. R. A. 1917E, 970.

■ It is so generally known as to amount to a matter of common knowledge that innumerable considerations enter into the question of determining rates to be applied to the services rendered to the public by public utility corporations. In fixing its rates, the distributor of gas must consider the cost of its product to the company as well as the ability of the consumer to advantageously use it in his business; the competition the distributor must meet from the distributors of other fuels, such as wood, coal, oil, electricity, as well as the competition the consumer must meet from others engaged in similar business; the volume to be supplied; the cost of distribution; the reserved right of cut-off in emergency; and the like.

■ A consumer cannot complain that a rate is discriminative, or so unreasonable as to warrant an action for overcharge, without a clear showing that others operating under similar conditions and circumstances are getting the benefit of a lesser rate than that exacted of him, and that, in consideration of all the various elements entering into the determination of the question, the rate charged him is excessive and unreasonable. Appellants failed to make such showing in the court below, either in their pleadings or the proof, and the trial judge properly so held.

The judgment is affirmed.