## MOORE v. DAVIS.
### No. 1360—5505.

Commission of Appeals of Texas, Section A.
May 7, 1930.

B. Y. Cummings and McDonald & Anderson, all of Wichita Falls, and W. S. Moore of Gainesville, for plaintiff in error.

Sullivan, Speer & Minor and John Speer, all of Denton, R. E. Taylor, of Wichita Falls, and Ocie Speer, of Austin, for defendant in error.

CRITZ, J.

On March 15, 1926, the plaintiff in error, W. S. Moore, was appointed district judge of the Sixteenth judicial district of Texas to serve until the next election. He became a candidate at the following Democratic Primary election in July and was defeated by Judge Alvin C. Owsley. During the progress of the campaign, the defendant, W. O. Davis, who was a practicing attorney of the district, caused to be published in the newspapers of Denton and Cooke counties, Tex., the counties comprising said district, the following matter alleged by the plaintiff to be libelous.

" 'W. S. Moore seems to think that he ought to be elected by the people because the lawyers are opposed to him. The lawyers are Moore's nearest neighbors and know more about him than anyone else. When did a man have the impudence to claim that he was entitled to an office because his neighbors did not have a good opinion of him? We should mistrust the man who claims to have bad neighbors; the fault is generally with himself. It is no recommendation to a lawyer that other members of the bar have a poor opinion of him. They are familiar with his method; they have been consulted by people who have had dealings with him and who complain that they have been defrauded. Mr. Moore could have urged as another qualification for district judgeship that the Odd Fellows are against him. He was formerly a member of the lodge and they know what he attempted to do with their property.

" 'I note that R. R. Bell, our former county attorney, and now a resident of Oklahoma City, has rushed into print advocating the election of W. S. Moore. The people remember how R. R. Bell prospered as county attorney. W. S. Moore learned under him. Nothing more need be said.' "

The plaintiff filed two libel suits against the defendant in the district court of Cooke county, Tex., based upon the above matter. In both suits plaintiff sought to recover damages, actual and exemplary, on account of the above-alleged libelous statements. The two cases were consolidated and tried together as one case. The trial court submitted the case to the jury on a general charge, and the verdict was for the defendant. Judgment was entered accordingly. This judgment was affirmed by the Court of Civil Appeals for the Seventh District at Amarillo. 16 S.W.(2d) 380, 381. The case is now before the Supreme Court on writ of error granted on application of the plaintiff, Moore.

As shown by the opinion of the Court of Civil Appeals, the plaintiffs alleged:

"Plaintiff alleges that such article was published on July 10 and 16, 1926, and was signed by the defendant, Davis; that by such language the defendant meant, and intended to mean, that the plaintiff, as a practicing lawyer, had defrauded his clients in his capacity as an attorney, and had been guilty of fraudulent, dishonorable, and criminal conduct in his relations with his clients as their attorney; that plaintiff had been guilty of fraudulent, dishonest, and dishonorable conduct in connection with the property belonging to the Odd Fellows lodge; that, while one R. R. Bell was county attorney of Cooke county, he had been guilty of fraudulent and corrupt conduct, had prospered thereby, and that plaintiff had learned, by reason of his association with Bell, to practice dishonorably and resort to corrupt methods in obtaining money. Plaintiff alleges that he had a good name, character, and reputation among the people of the judicial district; that he was then the judge of the judicial district, composed of the two counties in which the libelous matter was pub-

lished; that the people had confidence in his honesty and integrity, and that said article was published with the malicious intent to injure plaintiff, and that plaintiff had been injured and damaged in his good name and reputation, and had been humiliated and subjected to mental agony and distress; that many good and worthy citizens of the judicial district had believed the statements in said article, and that its publication exposed plaintiff to public hatred, contempt, ridicule, and financial injury, and tended to impeach his honesty and integrity; that, by reason of the wrongful and malicious acts complained of, plaintiff had sustained actual damages in the sum of $10,000, and exemplary damages in the sum of $15,000."

We also copy the following portion of the opinion of the Court of Civil Appeals showing the substance of defendant's answer:

"The defendant, Davis, answered by general demurrer, numerous special exceptions, general denial, and specially alleged, in substance, that in March, 1926, plaintiff had been appointed by Governor Ferguson to fill the vacancy in the judgeship for the Sixteenth judicial district, resulting from the death of Judge C. R. Pearman; that the defendant, as well as nearly every other practicing attorney in the district, believing the plaintiff to be unfit for that trust, protested against his appointment; that this protest angered the plaintiff, and in his speeches during the campaign for re-election, and in his published communications, he denounced the attorneys in the district, and especially those residing in Gainesville, as shysters, tricksters, and dishonest practitioners, who were opposing him because he would make them quit their dishonorable practice and conduct themselves properly. At the first term of the court which plaintiff held in Gainesville, he delivered a lecture from the bench, and in the hearing of many bystanders and the attorneys practicing before him, and openly charged that their practice and conduct had been criminal, and that his predecessors on the bench had permitted them to run the court and secure whatever decisions they desired, which practice he intended to stop. The plaintiff thus aspersed the memory of his predecessors, who were honorable and upright judges. After court adjourned, he openly stated that he delivered his lecture to show the lawyers that he was not afraid of them, and applied to the lawyers a vile epithet not fit for print. In his speeches advocating his cause before the people, especially in Denton county, he denounced the defendant as 'an old liar that no one would believe.'

"The defendant, believing plaintiff unfit for the judgeship, and that his election would be a public misfortune, endeavored to make known to the people some of the things showing him to be unfit for the office which he was seeking; that the matters stated in the publication were literally true, as well also as any legitimate inference therefrom. The defendant then sets out nineteen specific acts and transactions in which it is charged that plaintiff has been guilty of unfair, dishonest, and fraudulent conduct in relation to numerous parties and in connection with numerous business deals and transactions and in violation of plaintiff's duty as an attorney and an officer of court. Defendant then alleges that there are many other similar transactions in which the plaintiff has been engaged, but that defendant believes that those enumerated are sufficient to justify any legitimate inference from the newspaper publications complained of."

The charge of the court was a general one, and in order that our holding on the assignments based on the charge may be fully understood and fairly presented, we copy paragraphs 4 and 7 thereof:

"You are instructed that if you find and believe from the evidence before you that the articles published, as alleged by the plaintiff, W. S. Moore, and introduced in evidence before you were in fact false and untrue at the time the same were published, and that the defendant, W. O. Davis, knew the same to be false and untrue at the time he caused the same to be published, then you will find for the plaintiff, W. S. Moore, and assess his actual damages at such amount as you may find he has been actually damaged by reason of the publication and circulation of said articles, if you find that he has been damaged in any sum."

"You are further instructed that if you find and believe from the evidence before you that at the time defendant, W. O. Davis wrote, uttered, published and circulated the articles complained of and as alleged in the plaintiff's petition, that he did so believing the same to be true from all the facts and circumstances offered in evidence before you, then and in that event, you will find for the defendant."

The plaintiff assigns paragraph 7 above set out as error. An examination of the transcript shows that the objection made and filed by the plaintiff in the trial court reads as follows:

"The plaintiff specially excepts and objects to the Court's main charge and paragraph '7' thereof wherein he instructs the jury to find for the defendant if the defendant believed the articles to be true at the time he wrote, uttered, published and circulated the same, because said charge is not the law, places an undue burden upon plaintiff; is extremely prejudicial and is clearly on the weight of the evidence, and is in direct contradiction to paragraph '4' of the Court's main charge which correctly states the law. If the articles were in fact false defendant is

liable regardless of his belief concerning the truth and falsity thereof."

The Court of Civil Appeals holds that paragraph 7 is not error because it applies alone to exemplary damages. We are inclined to the view that this paragraph is so worded that it is calculated to lead the jury to believe that it applies to actual as well as exemplary damages. However, the exception expressly tells the court that paragraph 4 of the charge is correct. If paragraph 4 is correct, paragraph 7 is not in conflict therewith. Plaintiff having expressly approved and consented to paragraph 4, he is not in position to complain of the error in paragraph 7. In other words, we hold that since paragraph 4 of the charge expressly tells the jury that they must believe from the evidence that the articles in question were in fact false and untrue, and that the defendant, W. O. Davis, knew them to be false and untrue at the time he caused them to be published, before they could find a verdict for the plaintiff, and since the plaintiff expressly approved this charge and told the court it was correct, he expressly waived the error, if any, in paragraph 7, which to our minds is to the same effect, though in somewhat different language. Furthermore, even if the error in giving paragraph 7 had been cured by eliminating same from the charge, paragraph 4 to the same legal effect would have been left, and therefore no injury is shown in not eliminating paragraph 7 from the charge.

The plaintiff in error presents various assignments complaining of the ruling of the Court of Civil Appeals holding that the trial court did not err in admitting testimony in regard to certain matters and transactions occurring subsequent to the publication of the article made the basis of this suit. Among other things, it was proved that a suit was pending in the district court of Cooke county, Tex., in which Judge Moore, then the regular judge of said court, was plaintiff, and Judge Alvin C. Owsley, defendant; that Judge McCallum was acting as special judge in said case; that Judge McCallum had caused certain orders to be entered on the minutes of said court pertaining to that case; and that Judge Moore without authority of law caused the clerk to obliterate these orders from the minutes without the knowledge or consent of Judge McCallum. This transaction and the other subsequent transactions proved occurred shortly after the publication of the article in question in the instant suit.

Also in connection with the testimony in regard to having the above records obliterated, the trial court, in the instant case, gave the jury the following charge requested by the defendant:

"Gentlemen of the jury, you are instructed that a judge who brings a suit in his own be-half, in his own court is not authorized to make any orders in said suit or to control the disposition of the case and the plaintiff, W. S. Moore, had no right to order the clerk to erase from the minutes of the district court of Cooke County, Texas, the orders issued by Judge McCallum, which orders had been entered upon the minutes by the clerk of said court under the direction of the acting judge in said cause."

The plaintiff excepted to the giving of this charge on various grounds.

The defendant in error contends that the Supreme Court is without jurisdiction to pass on the assignments relative to the admissibility of this testimony, and the giving of the above charge, contending that the charge is but a ruling on the evidence. In this connection the defendant in error contends that the Supreme Court in no event has jurisdiction to pass on the admissibility of testimony, unless such testimony is controlling of the case, or presents a question of substantive law, and that even though the Supreme Court has jurisdiction of the case on other assignments, citing Browder v. Memphis, etc., 107 Tex. 535, 180 S. W. 1077; Smith v. Butcher, 110 Tex. 617, 223 S. W. 166; and Hartt v. Yturia Cattle Co. (Tex. Com. App.) 228 S. W. 551. In our opinion these cases do not support the defendant's contention. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185. The Browder Case, supra, was decided under the act of 1913. The Smith and Hartt Cases, supra, are cases in which the jurisdiction of the Supreme Court depended solely on alleged errors relating to the admissibility of testimony. The testimony was not controlling of the case, and the assignments presented no issue of substantive law in relation thereto to be decided by the Supreme Court, nor any other grounds of jurisdiction. In the case at bar the Supreme Court has jurisdiction on other assignments independent of those complaining of the admissibility of testimony, and therefore, under the statute, article 1728, has jurisdiction to consider and pass on all questions of law presented, including those involving the admissibility of evidence, whether such evidence is controlling or not. Holland v. Nimitz, supra.

Rev. St. art. 1728, as amended by Acts 1927, c. 144, § 1 (Vernon's Ann. Civ. St. § 1728), contains grounds upon which the Supreme Court is given authority to grant writs of error. The first paragraph in the article declares: "The Supreme Court shall have appellate jurisdiction co-extensive with the limits of the State, *extending to all questions of law* arising in the following cases when same have been brought to the Courts of Civil Appeals from final judgment of trial courts." It is thus seen that the statute expressly declares that when the Supreme Court

takes jurisdiction by writ of error of a case presented to that court, that jurisdiction extends *to all questions of law*. In other words, if the writ is granted under the first subdivision of the article, that is where the judges of the Courts of Civil Appeals disagree on any question of law material to the decision, then the jurisdiction of the Supreme Court extends *to all questions of law* arising in that case. The same rule will apply to each succeeding subdivision. The sixth subdivision in part declares that the Supreme Court may grant a writ of error "in any other case in which it is made to appear that an error of substantive law has been committed by the Court of Civil Appeals which affects the judgment," etc. The same rule should apply to cases in which writs of error may be granted under subdivision 6 as under the previous subdivisions, because we find no provision in the statute which limits in any way the initial declaration of this article which provides, in effect, that when once the writ of error has been granted the jurisdiction of the Supreme Court extends *"to all questions of law arising"* in the case. It is quite true, as above shown, that ordinarily a question of the admissibility of evidence is not one of substantive law, and the Supreme Court might not grant a writ of error where such a question alone is presented; but once the court examines an application and concludes an error of substantive law has been committed, then it follows, under the very language of the statute, its jurisdiction then extends *"to all questions of law arising"* in the case. The case of Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185, shows the difference between the statute as it now exists and the act of 1913.

■ This brings us to a consideration of the admissibility of the testimony regarding the matters and transactions occurring subsequent to the publication. In our opinion the assignments with reference to the admission of testimony in regard to the transactions occurring after the publication present no error. The plaintiff was a candidate for district judge at the time the article in question was published. An examination of the article will show that the purpose and effect of the same, as disclosed on the face thereof, is to charge that the plaintiff was an unfit person for such position. The article to a certain extent gives reasons for such charge. The charge that the plaintiff was an unfit person for district judge is general in its nature, and the specific matters contained in the article all go to demonstrate the truth of the main charge; that is, that the plaintiff was unfit to be district judge. We think the Court of Civil Appeals correct in holding that subsequent acts which throw light on the general charge were admissible, and that the authorities cited by that court sustain its holding. The authorities cited by the Court of Civil Appeals are as follows: Claypool v. Claypool, 65 Ill. App. 446; Matthews v. Detroit Journal Company, 123 Mich. 608, 82 N. W. 243; Lawson v. Journal Ass'n, 32 App. Div. 71, 52 N. Y. S. 484; State v. Bridgman, 49 Vt. 202, 24 Am. Rep. 124; State v. Way, 5 Neb. 283. When we examine the record with reference to the matters and transactions proved occurring subsequent to the publication, we find that they all occurred very recently after the publication of the articles here involved, and all very decidedly tend to show the plaintiff an unfit person for district judge. Therefore they throw light on the main question. For the reasons stated, we think this testimony was admissible.

■ With reference to the charge above set out bearing on the matter of Judge Moore having had the record in his own case obliterated, we think that in view of the fact that he was the regular judge of the court in which the case was pending, the defendant was entitled to have the jury instructed that he had no control over the minutes pertaining to that particular case. This was the effect of the charge.

We have carefully examined the record, and in our opinion the Court of Civil Appeals has made a correct disposition of this case, and we recommend that the judgment of that court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.