## TEXAS POWER & LIGHT CO. v. HILL-TOP BAKING CO.

### No. 1541.

Court of Civil Appeals of Texas. Waco.

Jan 10, 1935.

Rehearing Denied Feb. 7, 1935.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, and Bryan & Maxwell, of Waco, for appellant.

Jos. W. Hale and Geo. Clark, both of Waco, for appellee.

ALEXANDER, Justice.

The Hilltop Baking Company brought this suit against the Texas Power & Light Company to recover for alleged overcharges for electric current furnished by the defendant to the plaintiff from January 1, 1928, to April 1, 1933. The plaintiff alleged, in substance, that the defendant was a public service corporation engaged in furnishing electric current in the city of Waco to the public generally, and was prohibited by law from discriminating against any of its customers; that during the period in question the defendant had two rates or schedules at which it furnished electric current to its customers, which were known as the MR and the LP rates; that the MR schedule was the cheaper of the two rates, and that under plaintiff's set-up, considering the amount of power consumed and other necessary factors, plaintiff was entitled to the benefit of the MR rate; that notwithstanding these facts the plaintiff was billed and required to pay for current consumed by it at the rate provided for in the LP schedule, and as a consequence was overcharged to the amount sued for. Plaintiff further alleged that during said pe-

riod the defendant had supplied current to other consumers similarly situated as plaintiff, at the rate provided for in the MR schedule, and that as a consequence the plaintiff had been unlawfully discriminated against. The defendant answered by a general demurrer, certain special exceptions, a general denial, and a plea of limitation as to that part of the cause of action accruing prior to November 1, 1930. In reply to the plea of limitation the plaintiff alleged that the defendant had fraudulently concealed from the plaintiff the fact that it was furnishing current to other consumers situated similarly to plaintiff at the rate provided for in the MR schedule, and that plaintiff did not discover the contrary until within less than two years prior to the filing of the suit. The case was submitted to a jury on special issues and resulted in a verdict and judgment for the plaintiff for the sum of $8,742.41. The defendant appealed.

■ Appellant's first contention is that the plaintiff failed to prove that it was entitled to the benefit of the MR rate during the time in question. For the purpose of discussing this issue, the period in question will be divided into two sections, the first one being from January 1, 1928, to November 1, 1930, and the second one from November 1, 1930, to April 1, 1933.

During the first period, as above referred to, the MR schedule, as published by the appellant, contained the following provisions: "This rate is applicable for service to cotton seed oil mills and grain mills with contracted load of not less than 50 HP, and is to be used only when consumer executes company's standard form of contract covering this class of service."

The proof showed without dispute that during said period the appellee's contracted load exceeded 50 horse power, and that appellee was at all times willing to execute the company's standard form of contract in order to secure the benefit of said rate. The appellee admitted that it was not engaged in operating a cotton seed oil mill nor a grain mill, but alleged that the appellant, by custom and practice, had extended the application of the MR schedule so as to make same applicable and available to all electric current consumers within the vicinity of Waco where the contracted load exceeded 50 horse power, and had not confined the use of said schedule exclusively to cotton seed oil and grain mills. Written contracts entered into by appellant with various customers having contract loads

of not less than 50 horse power were introduced in evidence. These contracts showed that during the period in question the appellant had contracted with, and had furnished electric current to, twelve different consumers who were charged and billed under the MR schedule for the current consumed by them. Of this number only one was a cotton seed oil mill and only one was a grain mill. The others were engaged in various businesses, such as creameries, laundries, loading gravel, and the like. The jury found that during said period the appellant furnished electric current at the MR rate to consumers who were situated, in so far as their material billing factors were concerned, under similar circumstances as the plaintiff. We think the evidence above referred to was sufficient to support such finding.

■ During the second period, from November 1, 1930, to April 1, 1933, the MR schedule, as published by the appellant, contained the following provision with reference to its application: "This rate is applicable for service to grain and feed mills, to partially electrified cotton seed oil mills, to refrigeration plants and other industrial power loads normally operating day and night, with Contracted Loads of not less than 50 HP, and is to be used only when Consumer executes Company's standard form of contract covering this class of service. All electric energy furnished hereunder will be metered by one meter at one common point of delivery on the primary side of the Consumer's step-down transformers. Incidental lighting required by the Consumer in the manufacture of its products will be allowed under this schedule up to 10% of the Contracted Load."

The evidence shows without dispute that during said period appellee had an industrial power load normally operating day and night, with a contracted load of not less than 50 horse power, and that appellee was willing to execute the appellant's standard form of contract covering the service demanded by it. Its factory was equipped for metering the electric energy furnished to it by one meter at a common point at the place specified in the above-quoted application clause. The jury found that during the period in question the incidental lighting required by appellee in the operation of its plant did not exceed 10 per cent. of the contracted load. The appellant challenges the sufficiency of the evidence to support this finding, and, as a consequence, contends that the appellee did not prove that it was entitled to the MR rate during said second period.

There was no direct testimony as to whether or not the electric energy used by appellee for lighting purposes exceeded 10 per cent. of the current consumed by it. We think, however, that there were sufficient circumstances in the case to justify the jury's finding in favor of appellee on this issue. There was ample evidence to establish that no change was made in appellee's plant from January 1, 1928, to the end of the period here in controversy that would materially alter the percentage of electric current necessary for lighting purposes therein. It was undisputed that from May 1, 1930, to February 1, 1931, the appellee was furnished electric current under the LP schedule, and that schedule contained identically the same provision as did the MR schedule with reference to allowing only 10 per cent. of the contracted load for incidental lighting. Appellant's local manager testified that before appellee was put on the LP rate in May, 1930, his department had to determine whether or not appellee was entitled to said rate, and that if appellee had not come within the provisions of the application clause of the LP schedule, it would not have been given the benefit of such rate. He further testified that he thought that his company had made a test on appellee's plant to determine what per cent. of the electric current consumed therein was used for incidental lighting purposes. He said that if such test had been made, the records in his office would show the result thereof, and that he would later furnish such records to the court. He did not thereafter produce the records, nor deny that the test had been made. The evidence above quoted was sufficient to raise an inference that appellant made the test referred to and that the result of such test was favorable to appellee's contention. Otherwise such result would have been disclosed to the jury, or appellant's manager, after a search in his office, would have denied that such test had been made. Since appellant, presumably after having made such test, placed appellee's plant under a schedule that would not have been available to it if it had been using more than 10 per cent. of its contracted load for incidental lighting purposes, the jury had a right to assume that said plant came within the limitations of said schedule and hence did not use more than 10 per cent. of its contracted load for incidental lighting purposes. Since the jury found against appellant on this issue, we must give the evidence that construction most favorable to appellee. Giving the evidence such construction, we hold that it is sufficient to support the jury's finding that appellee did not use more than 10 per cent. of its contracted load for incidental lighting.

Public service corporations in the class with appellant, by reason of the extraordinary privileges accorded them, such as the right of eminent domain, and their power to exterminate all competition and to monopolize a business of such vital interest to the public, are quasi public corporations engaged in a business affected with the public interest, and hence are prohibited, both by the common law and by the statutes of this state, from discriminating between two or more customers, situated under like or similar circumstances, either as to the character of the service rendered or the charges made therefor. Revised Statutes, art. 1438; Raynolds Holding Co. v. El Paso Electric Co. (Tex. Civ. App.) 70 S.W.(2d) 624; Armour Packing Co. v. Edison Electric Illuminating Co., 115 App. Div. 51, 100 N. Y. S. 605; Gibbs v. Consolidated Gas Co. of Baltimore, 130 U. S. 396, 400, 408, 9 S. Ct. 553, 32 L. Ed. 979; Western Union Telegraph Co. v. Call Publishing Co., 181 U. S. 92, 21 S. Ct. 561, 45 L. Ed. 765; 10 American & English Ency. of Law (2d Ed.) 869. The trial court, by what we conceive to be an appropriate charge, submitted to the jury the issue as to whether or not, during the period in question, appellant furnished electric current on its MR rate to other consumers situated under similar circumstances to plaintiff in so far as their material billing factors were concerned, and the jury answered the issue in the affirmative. Consequently, appellant was not entitled to charge the appellee any more than was allowed under the MR schedule for the current furnished it.

The appellee sued for, and was allowed to recover, the difference between the amount that it had been required to pay for the electric current furnished it during the period in question and the amount that it should have been required to pay under the MR schedule. The appellant objects to this measure of damages, and seems to contend that appellee's only right of action was one in tort and that the measure of its damages was the amount of the injury, if any, to its business, such as the loss of profits, and the like. This contention seems to be sustained by the case of Homestead Company v. Des Moines Electric Co. (C. C. A.) 248 F. 439, par. 2, 12 A. L. R. 390, relied on by appellant. The form of the action, whether it should be one for money had and received or for tort, is of no material importance in Texas.

In this state a plaintiff is only required to make a concise statement of the facts upon which he relies and the court will grant the proper relief. We cannot agree that the measure of damages contended for by the appellant is the proper one to be applied in this case. It is probably true that if a consumer is unlawfully discriminated against by such a public service corporation, either by the failure to furnish adequate service such as is supplied to business competitors, or by overcharging for the service rendered, and, as a result, there is a loss of profits or the business of the consumer is destroyed, such consumer, in a proper case, might have a right to recover for the destruction of his business or for the loss of profits. See, in this connection, Pennsylvania Railway Co. v. International Coal Mining Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Lehigh Valley Railroad et al. v. Clark et al., 207 F. 717, 125 C. C. A. 235; Lehigh Valley Railroad et al. v. American Hay Co. (C. C. A.) 219 F. 539; Frankfort & C. Ry. Co. et al. v. Jackson, 153 Ky. 534, 156 S. W. 103; Wichita Falls Electric Co. v. Huey (Tex. Civ. App.) 246 S. W. 692. Suffice it to say that the right to recover for such uncertain damages is not here contended for by appellee. Here appellee is content if it be allowed to recover the difference between what it has been required to pay and what it should have been required to pay. This measure of damages seems to be the logical one to be applied in a case like the one here under consideration. It is easy of application and furnishes a more certain and definite measure for compensating for the loss sustained. It is void of uncertainties such as are encountered, and often poorly solved, by juries where loss of profits or injury to business is used as the standard of compensation. It fully compensates the consumer for the loss sustained by him and leaves the public service corporation in no worse position than it would have been had it acted in a lawful manner. Certainly, such a corporation cannot reasonably complain if it is compelled to restore that which it has unlawfully taken. The measure of damages applied by the trial court was a proper one in this case. 20 C. J. 339; Armour Packing Co. v. Edison Electric Illuminating Co., 115 App. Div. 51, 100 N. Y. S. 605; Western Union Telegraph Co. v. Call Publishing Co., 181 U. S. 92, 21 S. Ct. 561, 45 L. Ed. 765; Bilton Machine Tool Co. v. United Illuminating Co., 110 Conn. 417, 148 A. 337, 67 A. L. R. 814; Sullivan v. Minneapolis & R. R. Railway, 121 Minn. 488, 142 N. W. 3, 45 L.

R. A. (N. S.) 612; Union Pacific Ry. v. Goodridge, 149 U. S. 680, 13 S. Ct. 970, 37 L. Ed. 896.

With reference to appellant's plea of limitation to so much of the cause of action as is alleged to have accrued more than two years prior to the filing of the suit, the plaintiff alleged, and the jury found, in substance, that the appellant's agents at all times represented to appellee's agents that appellee was being given the best rate available; that appellee's agents relied on such representations; and that although appellee exercised reasonable diligence, it did not and could not discover the contrary until within less than two years prior to the filing of the suit. The findings by the jury appear to be supported by the evidence. Under such findings, it is clear that no part of the cause of action was barred at the time the suit was filed. Glenn v. Steele (Tex. Sup.) 61 S.W.(2d) 810; Raynolds Holding Co. v. El Paso Electric Co. (Tex. Civ. App.) 70 S.W.(2d) 624; Mason v. Peterson (Com. App.) 250 S. W. 142(9); Luginbyhl v. Thompson (Tex. Civ. App.) 11 S.W.(2d) 380 (4).

We have examined all other assignments and find them without merit. The judgment of the trial court is therefore affirmed.