# NOVEMBER, 1943

## P. S. FORD v. RIO GRANDE VALLEY GAS COMPANY.

No. 8106. Decided October 6, 1943.
Rehearing overruled November 3, 1943.
(174 S. W., 2d Series, 479.)

*E. A. McDaniel,* of McAllen, for petitioner.

*B. D. Kimbrough,* of McAllen, and *R. A. Hightower,* of Brownsville, for respondent.

*Walter H. Walne,* of Houston, and *Logan Ford, John Maxwell* and *Charles L. Black,* of Austin, filed briefs as amici curiae.

MR. JUDGE BREWSTER of the Commission of Appeals delivered the opinion for the Court.

P. S. Ford, petitioner, sued Rio Grande Valley Gas Company, respondent, under Art. 1438, R. S., 1925, to recover an alleged overcharge for natural gas purchased by him to operate a laundry and cleaning plant in McAllen. A trial court judgment for Ford was reversed and rendered for respondent by the Court of Civil Appeals. 169 S. W. (2d) 263.

Ford alleged that he was given a commercial rate graduated from 30 cents to 20 cents per thousand cubic feet, according to his maximum monthly consumption, but that six other named consumers in McAllen were given an industrial rate of 17 cents per thousand cubic feet per month; that these six concerns, "according to their locations, the means that had to be employed to furnish the gas, the nature of the business that they were engaged in, and the amount of gas consumed came under the same class" that he did; that respondent violated its duty to serve its consumers "without discrimination, that is to say, those within a reasonable class, according to amounts of gas consumed and the facilities required to furnish same"; and that, therefore, he was overcharged $1,728.44 during 1938 and 1939. By trial amendment, he alleged that he was an industrial consumer the same as the others were, in that they used steam boilers to process and can fruits and vegetables while he used a steam boiler to process and clean clothes.

Thus his case is grounded on the proposition that, since the utility had declared processors and canners of fruits and vegetables an industrial class and had promulgated a rate for

them, he was entitled to it because his business belonged to that class; and, since he was charged a higher rate, he should recover the difference as an overcharge. It is apparent that he is standing on Texas P. & L. Co. v. Hilltop Baking Co. (Civ. App.) 78 S. W. (2d) 718 (er. dism.), and Texas P. & L. Co. v. Doering Hotel Co. (Civ. App.), 147 S. W. (2d) 897, affirmed by this court in 1939 Texas, 351, 162 S. W. (2d) 938, which allowed the customers an overcharge recovery under the principle that a utility cannot extend the benefit of an established rate to some customers of the class for whom the rate is made and deny it to others who belong to that class because served under similar and like circumstances.

■■ There is no rule of thumb by which to determine whether the conditions of utility service are similar or dissimilar. It is a question of fact to be determined from the testimony in each case, and the burden of proof is on the complaining party. Elk Hotel Co. v. United Fuel Gas Co., 75 W. Va., 200, 83 S. E., 922. When the material billing factors are substantially the same the service is regarded as rendered "under similar and like circumstances," within the meaning of Art. 1438, supra. Texas P. & L. Co. v. Doering Hotel Co., 147 S. W. (2d) 897. Any matter which presents a substantial difference as a ground for distinction between customers, such as quantity used, time of use, or manner of service, is a material billing factor. American Aniline Products v. City of Lock Haven, 288 Pa., 420, 135 Atl., 726, 50 A. L. R., 121. Quantity used is an important one. Bilton Machine Tool Co. v. United Illuminating Co., 110 Conn., 417, 148 Atl., 337, 67 A. L. R., 814; Kolb Cleaning & Tailoring Co. v. Mississippi Power & Light Co. (Miss.), 145 So., 910. So is the cost of furnishing the service. Graver v. Edison Elec. Illuminating Co., 126 App. Div. (N. Y.) 371, 110 N. Y. Supp., 603. In fact, it has been said that quantity used and the cost of service are the principal ones. 43 Am. Jur., p. 690, sec. 179. And see Annotation at page 821, 67 A. L. R. Ford's pleadings recognize that he had to show the substantial sameness of those factors in the service to his laundry and in that to the canners, before he would be entitled to recover.

The relevant testimony is practically undisputed. The question is whether it shows that the material billing factors are substantially the same. The industrial rate, claimed by Ford, was established because the city officials and business men of McAllen were insisting on a low rate to attract the canning industry, which was going to other states on account of high rates prevailing in the citrus region of Texas. The city went so far as to grant a franchise to another utility when it agreed

to establish a rate of 17 cents to canning plants. The matter culminated in respondent making the same rate, the competitor going out of business, and respondent taking over its contracts. This rate was designated as a "Special Contract for Fruit and Vegetable Processing Plants Using in Excess of 1,000,000 Cubic Feet Per Month." It is not extended to all canners but only to those whose plants had the boiler capacity to use more than one million cubic feet of gas per month. Ford was operating under a commercial rate, which applied to all laundries, hotels and restaurants in McAllen with a minimum bill of $20.00 per month.

■ We think the record reflects a marked dissimilarity between certain material billing factors of Ford's laundry and those of the canning plants. In regard to the comparative cost of service, it appears that Ford's laundry was located in the old, settled part of McAllen, where all other users of gas, except a hospital and a few restaurants, were domestic consumers. So respondent had to construct a special pipe line to the laundry because it required a higher gas pressure than did the other consumers in that area, which pressure would have been dangerous to maintain in their lines. This line was of three-inch pipe and was 1270 feet long. For the reasons stated, it was not intended to serve, and did not serve, anybody but Ford. On the other hand, the canning plants were located in a new, thinly populated part of town, where there was room for other such plants, and where there were no domestic consumers. In this area were seven canning plants, which required only 4,389 feet of three-inch pipe to serve them, an average of 627 feet per customer, which average will be proportionately reduced if and when other plants are constructed there.

Again, the laundry operated all the year, whereas the canning plants ran only about an average of six months each year. Hence, the meters at the laundry were used continuously and had to be checked each week, while those at the canning plants could be taken down at the close of the season and reworked, and they were frequently used at cotton gins while the canning plants were idle. Obviously, that made the cost of service to the laundry greater than that to the canning plants. Moreover, the meter readings, book entries, filings and billings were about twice as much for the laundry as for a canning plant, thus comparatively increasing the cost of service to the former. It was shown, further, that because of the difference in gas pressure necessary for the laundry and that required for a canning plant, a meter sufficient to serve the laundry would deliver twice as

much gas at a canning plant. That circumstance made it cost more to serve Ford than to serve a canning plant.

These cost elements relate both to respondent's capital investment and to its operational cost, which are recognized in Graver v. Edison Elec. Illuminating Co., supra, as permitting a utility to fix a higher rate for the customer whose service entails the greater cost. In other words, "Where a particular customer is furnished a type of service, requiring additional expense to the utility company, superior to that furnished other customers, the company may exact of such favored consumer a higher charge therefor than it collects from those less favored." Texas P. & L. Co. v. Doering Hotel Co., 147 S. W. (2d) 897.

And there was a substantial difference between the amount of gas consumed by Ford's laundry and that used by the canning plants. During 1938 the laundry's average monthly consumption for 10 months was 490,000 cubic feet. The figures appear for only four of the canning plants for that year. Two of them had just begun to operate and used only a monthly average of 278,000 cubic feet for two months, and 98,000 cubic feet for four months, respectively. But the other two were going concerns, and they used a monthly average of 1,082,000 cubic feet for five months and 1,352,000 cubic feet for seven months, respectively. During 1939 the laundry's average monthly consumption for twelve months was 510,000 cubic feet, while that of the four canning plants was 535,000 for eight months, 564,000 for five months, 899,000 for nine months and 1,224,000 for eleven months, respectively. During 1940 the laundry's average monthly consumption for twelve months was 514,000 cubic feet, whereas that of five canning plants shown was 737,000 for seven months, 747,000 for five months, 920,000 for five months, 945,000 for seven months, and 973,000 for seven months, respectively. The substantial difference in these figures is obvious. At least, there was no proof that the difference was not substantial, therefore we cannot assume that it was not so or that it was insufficient to form the basis for the difference in classification made by respondent. Kolb Cleaning & Tailoring Co. v. Mississippi Power & Light Co., supra.

■ But Ford suggests that this difference in average monthly consumption was approximately equalized by the fact that his laundry operated all the year while the canning plants ran only part of the year. That proposition ignores the fact that seasonal operation of the canning plants enabled the utility, without

additional cost, to serve other customers who also operated seasonally but at a time when the canning plants were idle. The record shows that situation with respect to cotton gins. If the canning plants ran all the year respondent would have had to have more equipment to carry a higher peak load while the gins were operating than was required with both the canning plants and the gins operating seasonally but at different seasons of the year, because a utility must provide equipment capable at all times of affording the maximum amount of current for which there is a reasonable probability of demand. Smith v. Pub. Util. Com., 130 Ohio St., 328, 199 N. E., 179.

So Ford failed to show that he was entitled to the rate established for the canning plants, it affirmatively appearing that at least two material billing factors common to his laundry and to them were substantially different. See Wolf et al v. United Pas Public Service Co. (Civ. App.), 77 S. W. (2d), 1091 (er. dism.).

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court October 16, 1943.

Rehearing overruled November 3, 1943.