## UNITED GAS CORPORATION v. SHEPHERD LAUNDRIES CO., Inc.

### No. 11562.

Court of Civil Appeals of Texas. Galveston.

June 1, 1944.

Rehearing Denied Aug. 3, 1944.

930

Paul Port and Walter H. Walne, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellant.

Edward S. Boyles and M. U. S. Kjorlaug, both of Houston, for appellee.

GRAVES, Justice.

This appeal is from a $5094.10 judgment, entered by the 11st District Court of Harris County, in favor of appellee against appellant, wholly upon a jury's findings in response to special issues submitted, wherein the Gas Company was held to have discriminated against the Laundries Company in this one respect: in having charged it higher rates for natural gas supplied to it in specified periods of time and amounts than it did other named ones of appellant's customers, "under similar and like circumstances".

The right to such recovery was predicated by the court upon Article 1438 of Vernon's Texas Civil Statutes, and the measure thereof—following the appellee's specific declaration of that as its sole resulting damage or injury from the alleged wrongful charges—was arrived at by taking the difference between the aggregate sums of money so paid to appellant by this appellee and those paid it by the others of its customers, under the respective higher and lower sets of rates, whom the jury—in its answers to the issues—found to have been served by it with gas "under similar and like circumstances" as the appellee was, but at the lower rates alleged.

To more correctly state the gist of the action, and in a form approved in the briefs of both litigants: Appellee's petition labeled the suit as one for damages for alleged discrimination in rates, at which gas was sold to it during the period from June, 1934, to October, 1942. It charged that, during such period, appellant supplied gas to appellee at a rate of 19¢, 18¢, 17¢ per thousand cubic feet while, during the same period, gas was supplied to other customers of the appellant (including Public Laundries, Port City Packing Company, Ineeda Laundry, Fehr Baking Company, St. Joseph's Infirmary, Oriental Textile Mills, Texas Creosoting Company, United Creosoting Company) at lower rates; that is, the two Laundries, the Packing Company, the Baking Company, and the Infirmary during part of the stated period were charged 14¢, 13¢, and 12¢, while during another part the Textile Mills and the two Creosoting Companies were charged 16¢ and 15¢; that the appellee was supplied the gas under like and similar circumstances as were the other named purchasers of it. The suit is thus (nominally, at any rate, under the appellee's trial petition) for the difference between the rates actually paid by appellee and the rates it would have paid, if, during these different periods, it had been supplied the gas at the lower rates alleged to have been charged the other referred-to customers, together with interest to the date of the trial on the monthly payments it had so made.

A third party to the suit in the trial court, who had been vouched in by appellant on a cross-claim against him, charging that he owned a one-half interest in the appellee's asserted cause of action against it, R. F. Hibbetts, was awarded a "take nothing" decree in his favor against both the appellant and the appellee, and neither has appealed therefrom; hence that portion of the trial court's judgment, not having been brought here for review, must remain undisturbed.

While appellant did in its motions below for peremptory instructions and judgment non obstante veredicto assert there was no evidence raising the issues given the jury, it has presented here no assignment to the effect that its findings thereon, upon which alone the judgment was so entered for the appellee against it, were either—on the facts—without any evidence to sustain them, or were so against the great weight and preponderance of its entire body as to be clearly wrong; on the contrary, it admits the specific rates charged the appellee itself, as well as those charged the other consumers it grounded its cause of action for discrimination upon, to be

correct; but, while so conceding the facts to be, it planted its main defense upon the claim that the appellee—as a matter of law—had fundamentally failed to either plead or prove any valid cause of action against it, because it had neither alleged, proved, nor pled any damages to its business as constituting the proximate result of the discrimination so declared upon.

Therefore, on the coming in of the jury's verdict finding the discrepancies indicated in detail as to dates, consumers, and amounts substantially as declared upon by the appellee, having, as indicated, during the trial first moved for peremptory instructions in its favor on the same ground, appellant then duly followed with its motion below, praying the court to enter judgment in its favor notwithstanding.

After an extended hearing before the trial court, that motion was overruled, as well as appellant's subsequent one for a new trial on the whole cause; hence this appeal.

In this court appellant repeats the contentions it made below, its leading ones being that the court erred in not sustaining its motions for peremptory instruction and for judgment notwithstanding the jury's verdict; that Article 1438, Revised Civil Statutes of Texas, lends no support whatever to the appealed-from judgment, since it "is a simple statutory enactment of the American common law rule", which "made no requirement as to equality in rates, except in those cases where unequal rates were charged customers in direct competition with others."

Its further presentments challenge as error these rulings of the trial court: (1) In excluding the testimony of J. V. Strange as to the value of service as a factor in rate making; (2) in admitting evidence as to certain other rates than those alleged in the appellee's trial petition; and (3) in including $1554.69 in the judgment on the theory that the appellee was entitled to service at the 14¢, 13¢, and 12¢ rates from June, 1934, to July 25, 1935.

The appellee, in turn, defends the recovery so awarded it as being entirely consonant with the cited statute, as construed by the appellate courts of Texas, the evidence, and the jury's unchallenged verdict thereon.

It characterizes its suit as being "in the nature of one for money had and received, wherein appellee seeks to recover moneys unlawfully exacted from it, which the appellant unlawfully retained". In doing so, it relies upon some "conclusions" filed by the trial court in overruling appellant's motion for judgment non obstante veredicto, of which those deemed most material were as follows:

"The evidence shows no applicable rates to have been fixed by any administrative authority. The evidence of Mr. Strange and Mr. Simons, defendant's executives (which is the only evidence on the point), shows that the elements considered by defendant in fixing a rate to industrial consumers were: (1) Value of service to consumer; (2) Load; (3) Volume; and (4) Competition. There were no published definitive schedules of defendant as to their industrial consumers, unless the above rate-factors constituted such schedules.

"The jury answered special issues submitted to it that certain consumers enjoying a lower rate were served under 'Similar and like circumstances' as the plaintiff.

\* \* \* \* \*

"In the Doering case Justice Baugh, ([Texas Power & Light Co. v. Doering Hotel Co., Tex.Civ.App.] 147 S.W.2d [897], page 902, column 1, paragraphs 2 and 3) states that—as to the consumers there involved—there were no fixed classifications as between them and no published rates as applicable to differing classes; that, therefore, whether or not such consumers were similarly situated to Doering presented a fact question. I think that is the fact situation in this case. There does not appear to have been any fixed classification between industrial customers of the defendant as applicable to differing classes, and that similarly a fact situation was thereby presented to be determined by the jury based upon the evidence before it. In the Doering case, under those circumstances, recovery was affirmed by Justice Baugh, in effect lowering Doering's rate to that enjoyed by other customers similarly situated, and fixing that as Doering's measure of damage.

"Justice Sharp for the Supreme Court, in affirming the case [139 Tex. 351], 162 S.W.2d [938], page 941, column 1, paragraphs 3 and 4) stated: 'Doering is therefore entitled to recover damages for such discrimination.' The damage which Doering sought was the difference between the rate paid by Doering and the lower rate paid by other consumers alleged to be similarly situated, and so found by the jury, and

not loss of profits, or damage to business. Therefore, * * * it is my belief the Supreme Court has decided the point in the Doering case, as well as by its action in dismissing the Writ of Error in the Hilltop case [infra.] "

This record is bulky, the briefs greatly extended, and the arguments have run far afield; but this court is constrained to hold that, when the controversy is held down to the facts alleged and shown to have attended the dealings of these two parties, the cause becomes a comparatively simple one, the rules of law governing which have now been declared by our appellate courts in a series of decisions, some of them having been rendered since this trial below, to-wit: Ford v. Rio Grande Valley Gas Co., 141 Tex. 525, 174 S.W.2d 479; Kousal v. Texas P. & L. Co., Tex.Sup., 179 S.W.2d 283; Texas P. & L. Co. v. Hilltop Baking Co., Tex.Civ.App., 78 S.W.2d 718, error dismissed; and Texas P. & L. Co. v. Doering Hotel Co., 139 Tex. 351, 162 S.W.2d 938.

As the three recent opinions of our court of last resort in these Doering, Ford, and Kousal cases make plain, our statute upon which this suit was grounded, cited Article 1438, has now received an authoritative construction that is regarded as comprehending the state of facts here obtaining; hence recourse to its origin and to what the common law on the subject of discrimination going before it was, would seem to be no longer called for.

In the next place, under the undisputed facts, the questions posed by this appeal, it is thought, may be further clarified by these deductions from the state of the record as a whole:

(1) This is not a rate-making case—that is, one in which the elements properly entering into the establishment in the first instance of any natural gas service rate are involved, or to be inquired into; rather does it have to do wholly, from start to finish, with the question of how rates already made (in some fashion) could lawfully be applied or manipulated as between these two parties, under the contractual relations of utility purveyor and consumer of that product.

(2) It is also conclusively established, in this instance, that there was never a rate for this sort of service fixed by any regulatory body, nor was there ever any assembled or published schedule of appellant's rates available to the general public; on the contrary, the only source of information relative to the rates it charged was the individual customers' contracts with it in any particular case, inclusive of those of the appellee and of the lower rate-payers here involved.

(3) The appellee made no complaint against the 19¢, 18¢, and 17¢ rates charged it per se; it admitted having contracted in writing with appellant in good faith to pay them; but it based its whole claim for legal grievance on the charge that appellant broke faith with it by likewise contracting at the lower rates with the other consumers without its knowledge, for the same service under similar and like circumstances.

When the resulting reaches of this controversy are subjected to the rules so laid down in the cited cases, it seems clear that the case for discrimination here made out did come within them, particularly as declared in the Hilltop Baking Company and Doering Hotel cases, and that the appellee not only did sustain the burden it had under the law of showing similarity between itself and the other customers admittedly favored by appellant with the lower rates, but also that it was in fact in the same rate-classification with them. That being true, it was entitled to the recovery awarded it.

There is much disputation in the briefs as to whether or not there are conflicts between the decisions in some of the last-cited cases, especially between the Hilltop and Doering holdings and the later ones of the Supreme Court in the Ford and Kousal cases, supra. As this court understands the Supreme Court's opinions in the Ford and Kousal cases, however, that court itself recognized no such conflict; to the contrary, in its opinion in the Ford case, 174 S.W.2d at page 480, column 1, it differentiates both the Hilltop and Doering cases from the Ford case by simply saying that they both "allowed the customer an overcharge recovery under the principle that a utility cannot extend the benefit of an established rate to some customers of the class for whom the rate is made and deny it to others who belong to that class because served under similar and like circumstances."

Whereas Ford, on the other hand, was denied any recovery for an overcharge, because in that instance the utility had previously put canning plants and laundries in

different classes and had promulgated lower rates for the former than for the latter, which classification and different rates the court held to have been justified by the undisputed evidence, as shown by these declarations:

"We think the record reflects a marked dissimilarity between certain material billing factors of Ford's laundry and those of the canning plants. * * *

"So Ford failed to show that he was entitled to the rate established for the canning plants, it affirmatively appearing that at least two material billing factors common to his laundry and to them were substantially different. See Wolf et al. v. United Gas Public Service Co., Tex. Civ.App., 77 S.W.2d 1091, error dismissed."

So, likewise, with the Kousal case. There also the Kousals sought to recover overcharges for lighting purposes, because the utility had furnished lower rates to other consumers, similarly situated with themselves, for power consumption only; but the Supreme Court based its holding against them squarely upon the findings on the facts in that instance that the City of Waco had theretofore legally established different rates for the two kinds of service and that the Kousals, whatever damage they had sustained by having been required to pay higher rates than other consumers similarly situated, had only paid the rates for their own class fixed by a governmental agency with power to do so; hence they had only suffered a damnum absque injuria; the court's final declaration to that effect being this [179 S.W.2d 287]: "Therefore, we are constrained to hold that, although the case made by the Kousals does show unlawful discrimination and preference by the utility of other similarly situated customers, it does not show that the Kousals were charged more than the rate approved and agreed to by the duly constituted governmental agency, hence that they failed to establish a cause of action for overcharge."

As before suggested, since our appellate courts have already explored the rather wide field of litigation relating to discrimination under the statute here involved, and have authoritatively interpreted the meaning of the declaration there made that it shall be unlawful for any natural gas corporation to discriminate against any person, or other corporation, "in the charge for such gas * * *, or in the service rendered under similar and like circumstances", it would seem a work of supererogation to undertake to review or add anything thereto.

Since the interpretative rules thus laid down by our appellate courts were applied to the legal equivalent of the undisputed facts here obtaining, or at least to dependably analogous situations, they only need to be applied to these facts, which, in general sum, have already been given.

■ There having been here no rate ever established by any public body, nor any published schedule of rates for such service ever set up by the appellant, and the facts of its alleged charges against the appellee and the other consumers having been to all intents and purposes admitted by the appellant, there only remained the issue of whether or not these litigating parties had been served therein "under similar and like circumstances"; that, by all of our authorities, is declared to be a question of fact, and the trial court submitted it in simple and plain inquiries to a jury, which on evidence this court deems not only to have been sufficient to raise the issues, but to have supported the verdict rendered thereon, were in each instance answered in the appellee's favor.

This result below, therefore, is held to have brought this case to a final parity with that of Texas P. & L. Co. v. Doering, which the Supreme Court thus ruled upon:

"The jury in this case decided all questions of fact against T. P. & L., and both the trial court and the Court of Civil Appeals held that the evidence supports the judgment of the trial court. Therefore this case presents a question of fact, and not a question of law, and this Court is not authorized to overturn the verdict of a jury when it is supported by the evidence. * * *

"Under the statutes, as well as under the decisions of this State, T. P. & L., a public service corporation, cannot discriminate between its customers, similarly situated, in the matter of rates or charges. Article 1438, R.C.S. 1925; El Paso Elec. Co. v. Raynolds Holding Co., 128 Tex. 495, 100 S.W.2d 97, 108 A.L.R. 744; 34 Tex.Jur., p. 719, § 17. The jury found, and its finding is supported by the evidence, that other consumers, situated similarly to Doering, were charged a different rate and were metered by a different method. Doering is therefore entitled to recover damages for such discrimination."

These holdings of the Supreme Court in dismissing the application for writ of error in the Hilltop case and in so affirming the judgment of the Court of Civil Appeals in the Doering Hotel case, constituted an approval by it of the measure of damages applied in each of those controversies, which was, respectively, identical with that declared upon by and awarded to the appellee in this cause.

None of appellant's remaining three points are considered to involve reversible error.

■ The excluded testimony of Mr. J. V. Strange related to the general question as to the value of the service to the customers of utilities, as a factor in rate making, and was offered in justification of the lower rates applied to the favored customers in this instance; but, if the foregoing determination that this is not a rate-making case be sound, this was an immaterial inquiry. In any event, however, it is thought to have been so, since, under our cited statute and the court holdings construing it, no such consideration was justified, as against a discrimination coming within the ban of that statute.

■ There was no error in the court's having admitted, over appellant's objection, evidence with respect to rates at which it had sold gas to customers other than those named in the appellee's trial petition; because, it reasonably tended to show that appellant had not established any uniform rate structure or classification of customers governing its service, but, instead, that its rates, or charges, had been habitually based upon expediency only; so that, as before indicated, the only keys to them were the various contracts therefor between it and its different customers.

Appellant's protest against the trial court's inclusion of the $1554.69 item in its judgment is based upon its claim that it had by mistake rebated the Public Laundries for the period involved in that amount.

■ That matter was, however, passed upon adversely to it in that court both upon original hearing and on motion for a new trial; presumptively, at any rate, the facts underlying it were found in the appellee's favor, hence this court is in no position to disturb that finding. If, on the other hand, it was only a mistake of law, no action for its recovery would now lie. Gilliam v. Alford, 69 Tex. 267, at page 271, 6 S.W. 757; Stegall, Sheriff v. McLennan County, Tex.Civ.App., 144 S.W.2d 1111; 29 Tex.Jur., page 709, No. 6.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.

## On Motion for Rehearing.

Appellant has presented an extended motion for rehearing, and both sides have accommodatingly furnished the court with full written arguments and citations of authorities for consideration with it.

So aided, much time and labor has been expended in the re-examination of the record and the reconsideration especially of the authorities upon which the original opinion was based; as a result, with great consideration for appellant's opposing view, which extends to most, if not all, the holdings then made by it, this court is constrained to adhere to them all, both as to findings of fact and conclusions of law.

Appellant reiterates its claim for conflicts in the Supreme Court's opinions and official action in the Doering, Hilltop, Ford, and Kousal cases, particularly on the leading question of the measure of damages in a case for discrimination, under our Article 1438; vigorously contending that of the five questions of law it has presented here not one of them was raised in the records before the Supreme Court in either the Doering or Hilltop cases, and asserting that, in consequence, neither the Supreme Court's action in so affirming the one and dismissing the other is authority for this court's judgment in this cause; further, that the Hilltop case holding on the question of measure of damages is not only unsupported by any cited authority therein, but is also in direct conflict with the Supreme Court's holdings in the Ford, Kousal, and Doering cases.

■ In this connection, it invites this court to go behind the Supreme Court's reported judgments, and inquisitorially investigate the records in those cases for itself, to determine whether or not its contentions were presented, and thereupon to decide what "questions of law" the Supreme Court's jurisdiction extended to. This court is unable to accept the invitation, concluding rather, under the present state of amended R.S. Article 1728, Vernon's Ann.Civ.St. art. 1728, and such cases as Moore v. Davis, Tex.Civ.App., 27 S.W.2d 153, Commercial Standard Ins. Co. v. Robinson, Tex.Com.App., 151 S.W.2d 795, and Humble Oil & Refining Co. v. State,

Tex.Civ.App., 158 S.W.2d 336, that this court is bound by the decisions of the Supreme Court as rendered and that such court's jurisdiction, "when once the writ of error has been granted * * * extends 'to all questions of law arising' in the case" [27 S.W.2d 157], of which the measure of damages therein involved must have been one.

If, as the Supreme Court, at least by plain implication, holds, overcharge recoveries were properly allowed under the provisions of Article 1438 on the facts in the Hilltop Bakery and the Doering Hotel causes—which status was not attained in the subsequent instances of Ford's Laundry and the Kousals' Market, because, likewise on the facts, Ford failed to show his laundry to have been served under like and similar circumstances with the favored canning plants, while the Kousals, although held to have been discriminated against, failed to prove they had paid any more than the officially binding rate established by the Waco City Ordinance—then, by parity of reasoning, the same sort of recovery allowed this appellee under facts not in legal effect in anywise different, should not be stricken down.

Moreover, this court perceives no such conflicts, being of opinion that there exists a line of continuity of decision down through that group of holdings, when they are all correctly construed, and each is assigned to its proper class.

As recited in the former opinion, all the questions of fact here involved were resolved in appellee's favor, and appellant has made no proper attack upon them; it was shown and found that all the lower-rate payers in this instance were served for less, in like and similar situations to that of the appellee, and that all the "material-billing-factors" as between them and it were substantially the same.

In such a situation, where there has been no authoritative rate required by law to be enforced, nor even an established or published one, it seems to be the well-settled rule that the lowest rate charged any of such customers becomes the lawful rate for them all. Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, 1453, Ann.Cas.1915A, 315; Postal Tel. Co. v. Associated Press, 228 N.Y. 370, 127 N.E. 256; Texas P. & L. Co. v. Hilltop Baking Co., Tex.Civ.App., 78 S.W.2d 718;

Texas P. & L. Co. v. Doering Hotel Co., Tex.Civ.App., 147 S.W.2d 897; El Paso Electric Co. v. Raynolds Holding Co., 128 Tex. 495, 100 S.W.2d 97, 108 A.L.R. 744; Kousal et al. v. Texas Power & Light Co., Tex.Sup., 179 S.W.2d 283; Ford v. Rio Grande Valley Gas Co., 141 Tex. 525, 174 S.W.2d 479.

Pursuant to these conclusions, the motion will be overruled.

Motion for rehearing overruled.

Motion refused.