AT & T COMMUNICATIONS OF the
SOUTHWEST, INC., et al.,
Appellants,

v.

PUBLIC UTILITY COMMISSION OF
TEXAS, et al., Appellees.

MCI TELECOMMUNICATIONS
CORPORATION, et al.,
Appellants,

v.

PUBLIC UTILITY COMMISSION OF
TEXAS, et al., Appellees.

Nos. 14657, 14658.

Court of Appeals of Texas,
Austin.

June 10, 1987.

Rehearing Denied Sept. 23, 1987.

Ray G. Besing, Dallas, J. Alan Holman, Dennis P. Reis, Brown, Maroney, Rose, Barber & Dye, Austin, for MCI.

Thomas M. Pollan, Katie Bond, Bickerstaff, Heath & Smiley, Austin, for Texas Ass'n of Long Distance Telephone Cos.

W. Scott McCollough, Asst. Atty. Gen., Austin, for State Purchasing & Gen. Services Com'n.

Thomas A. Grimaldi, Shawnee Mission, Kan., for U.S. Telecom.

Paul Herrmann, McElroy, Williams & Sullivan, Austin, for U.S. Sprint.

Geoffrey M. Gay, Asst. Public Counsel, Austin, for Office of Public Utility Counsel.

Fernando Rodriguez, Asst. Atty. Gen., Austin, for Public Utility Com'n.

John Andrew Martin, Carrington, Coleman, Sloman & Blumenthal, Dallas, for Continental Tele. Co.

Dale H. Johnson, Brian P. Quinn, McWhorter, Cobb & Johnson, Lubbock, for Texas Statewide Telephone Co-op.

Brook Bennett Brown, McGinnis, Lo-chridge & Kilgore, Austin, for Central Telephone Co.

Grace H. Casstevens, Butler & Casstevens, Austin, for Cities.

Jon Dee Lawrence, Southwestern Bell, Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Southwestern Bell Telephone Co.

Joe N. Pratt, Kleberg, Dyer, Redford & Weil, Austin, for AT & T.

Before SHANNON, C.J., and BRADY and CARROLL (not participating), JJ.

SHANNON, Chief Justice.

Appellant AT & T Communications of the Southwest, Inc., (AT & T), and others, perfected administrative appeals to the district court of Travis County from orders of the Public Utility Commission in docket nos. 5113 and 5220. In docket no. 5113, the Commission established and applied a system of long distance telephone "access charges," while docket no. 5220 concerned Southwestern Bell's application for a rate increase. Appellees Southwestern Bell Telephone Co. (SWB), and others, intervened in the administrative appeals pending in district court. The district court consolidated the administrative appeals into two causes and, upon hearing, rendered judgment in each cause sustaining the respective agency order. Appellants' separate appeals were submitted to this Court consecutively. Because the appeals concern common legal issues, this opinion disposes of both. This Court will reverse the district court's judgments.

By one of their principal points of error, AT & T and the other appellants [1] complain that the district court erred in sustaining the agency orders which imposed access charges on them but not on SWB and other similarly situated telephone companies, even though SWB and the others use the same telephone exchange facilities for the same purposes as appellants.

The origin of the problem in this appeal is found in the federal consent decree ordering divestiture of the Bell Telephone System. With divestiture, the long distance telephone network, traditionally operated by AT & T, in co-operation with the regional Bell Operating Companies, was dismantled. As a result, Texas telephone companies such as SWB, along with small independent telephone companies (local exchange carriers) no longer participated in the revenue generated by the Bell System's long distance network, yet those companies needed their share of this revenue, or an adequate substitute, to cover their costs of operation.

Adopting the system established by the Federal Communicationss Commission on the interstate level, the Public Utility Commission (Commission) instituted the "access charge" process to produce the needed revenue. The Commission formulated the access charge process in Docket 5113 and applied it in the SWB rate case, Docket 5220, as well as in the tariff filings of the local exchange carriers. An access charge is a fee paid by AT & T Communications and the other appellants (other long distance common carriers or "OCCs"). The charge pays for the carrier's "access" to local telephone exchanges operated by SWB and the local exchange carriers.

Access to the local telephone exchange is necessary to originate and complete customers' long distance calls. As explained by the parties, there are three essential components to any long distance telephone call. First, the call must be transmitted from the originating customer to the long distance carrier's switch (originating access). Second, the call must be transmitted from the long distance carriers' switch in the originating customer's service area to a switch in the service area of the called party (interexchange transmission). Finally, the call must be transmitted from the long distance carrier's switch to the called party (terminating access).

---

1. Other appellants include MCI Telecommunications, Inc., U.S. Telephone, Inc., Texas Association of Long Distance Telephone Companies, GTE Sprint Communications Corporation, and State Purchasing and General Services Commission.

The services of (1) SWB and the local exchange carriers, and (2) the interexchange carriers do not generally overlap because the interexchange carriers provide long distance service, while the local exchange carriers provide access and local service. In providing intra-LATA[2] long distance service, however, the two classes of carriers compete. In docket 5113, the Commission leveled access charges against AT & T and the OCCs whether they were providing intra-LATA or inter-LATA service. In contrast, the Commission's order did not require the local carriers and SWB to pay access charges or to reflect an access charge as an element of their intra-LATA toll rate. Instead, the Commission placed SWB and the local exchange carriers into an "intra-LATA toll pool." As we understand, this system involves "pooling" the combined intra-LATA revenues from SWB and the local exchange carriers and apportioning the revenues to the companies through a "separations" process.

The access charge payable by AT & T and the OCCs to the local exchange carriers and SWB permits the local exchange carriers and SWB to recover an element of their operating expenses known as non-traffic sensitive ("NTS") costs. NTS costs are those expenses involved in maintaining local telephone exchange lines and facilities.

When AT & T and the OCCs utilize local facilities to originate and terminate a long distance call, they exact a "cost" to the local system which is compensated for by the access charge. Likewise, when a local exchange carrier or SWB originates and terminates an intra-LATA long distance call, it exacts the same NTS cost to the local system, but under the Commission's order there is no access charge placed on the call.

AT & T and the OCCs urge that the divergence in treatment between them and the local exchange carriers and SWB in the intra-LATA market, has left them saddled with an unlawfully disproportionate burden of the NTS costs. AT & T and the OCCs argue, in effect, that through access charges which, for certain distances, are higher than the entire retail price of the local exchange carrier's or SWB's toll call, they are being forced to subsidize their competitor's toll business. Accordingly, AT & T and the OCCs claim that the Commission's orders, in the area of intra-LATA tolls, are unlawfully discriminatory and anticompetitive in violation of the Public Utility Regulatory Act (PURA), Tex.Rev. Civ.Stat.Ann. art. 1446c (Supp.1987).

In general, AT & T and the OCCs claim that the Commission's failure to level access charges against the local exchange carriers and SWB violates PURA §§ 18, 37, 38, 45, and 47.

PURA § 37 provides that:

the commission is hereby vested with all authority and power of the state of Texas *to insure compliance* with the obligations of public utilities in this Act. (Emphasis supplied).

PURA § 18 empowers the Commission to formulate:

new rules, policies and principles ... to *protect the public interest* and to *provide equal opportunity* to all tele-communications utilities in a competitive marketplace. (Emphasis supplied).

PURA § 38 requires the Commission to insure that public utility rates:

shall not be *unreasonably* preferential, prejudicial, or discriminatory, but shall be sufficient, equitable, and consistent in application *to each class of consumers.* (Emphasis supplied).

PURA § 45 provides further that:

No public utility may establish and maintain any unreasonable differences as to rates of service either as between localities or *as between classes of services.* (Emphasis supplied).

Finally, PURA § 47 addresses anti-competitive conduct as well as discrimination by utilities:

---

**2.** Pursuant to the divestiture order of the federal court, Texas is divided into districts known as "Local Access and Transport Areas" (LATAs). Local exchange carriers, and Southwestern Bell, provide long distance service intra-LATA. AT & T and the OCCs are not prohibited by the federal court order from competing for long distance business intra-LATA.

No public utility may discriminate against any person or corporation that sells or leases equipment or *performs services in competition* with the public utility, nor may any public utility engage in any other practice that *tends to restrict or impair such competition.* (Emphasis supplied).

■ Not all discrimination ordered or countenanced by the Commission is unlawful. *Texas Alarm Signal Association v. Public Utility Comm'n,* 603 S.W.2d 766 (Tex.1980); *Amtel Communications v. Public Utility Comm'n,* 687 S.W.2d 95 (Tex.App.1985, no writ). In *Texas Alarm,* the Supreme Court held that "[i]n general, § 38 [of PURA] requires rate structures to be just, reasonable, and not *unreasonably* discriminatory. This broad standard allows the Public Utility Commission discretion to determine the method of rate design. It also gives the Commission the discretion to consider factors other than cost and adjusted values of property." *Id.* 603 S.W.2d at 772. (Emphasis added). Such distinguishing factors include:

1) cost of service
2) purpose for which service received
3) quantity or amount received
4) differing character of service received
5) time of use
6) any other "substantial" difference

*Id.*

■ This Court in *Amtel* wrote: "the antidiscriminatory principle ... *includes a permissible range of unequal treatment which, while literally discriminatory, is not unlawfully so." Amtel* 687 S.W.2d at 102 (Emphasis in original). Discriminatory actions must be judged by a rule of "reasonableness." *Id.* These opinions reflect the principle that before impermissible discrimination exists, there must be a showing that a differential exists between *similarly situated* customers. *E.g., City of Texarkana v. Wiggins,* 151 Tex. 100, 246 S.W.2d 622 (Tex.1952); *Ford v. Rio Grande Valley Gas Co.,* 141 Tex. 525, 174 S.W.2d 479 (Tex.1943). This rule is carried forward into PURA. *See* § 38 (rates "consistent in application to each *class* of consumers"); § 45 (utility may not grant preference, ad-

vantage to corporation or person *within any classification* ).

■ In the beginning, and in the absence of disagreement among the parties, this Court accepts the premise, reflected in the Commission's findings, that use of local exchange plants and facilities by local exchange carriers and SWB in making intra-LATA long distance calls is functionally identical to the use of the same by AT & T and the OCCs.

Upon review of the record, this Court is of the view that the proof supports the thesis that the Commission's order, leveling an access charge on AT & T and the OCCs for intra-LATA long distance calls while exempting the local exchange carriers and SWB from the charge, is discriminatory. As this Court understands, for certain intra-LATA long distance calls, particularly those made over shorter distances, the entire basic rate charged by the local exchange carriers and SWB is less than the access charge paid by AT & T and the OCCs, not computing in other costs that AT & T and the OCCs must reflect in their long distance charges.

This discrepancy apparently results because Texas access charges are based upon access charges computed by the Federal Communications Commission for interstate telephone service. While the Federal Communications Commission-derived access charges are designed to reflect *post-divestiture* costs and conditions, the toll rates recovered by SWB and the local exchange carriers are based primarily on *historical, pre-divestiture* toll costs.

The net effect is that a customer must pay more for an intra-LATA long distance call placed through AT & T or an OCC than for one placed through a local exchange carrier or SWB. This fact, of course, places AT & T and the OCCs at a competitive disadvantage with the local exchange carriers and SWB. PURA §§ 38, 47.

Appellees suggest that because appellants and appellees are not similarly situated, the rate discrimination in their favor was justified. As for AT & T, appellees claim that it does not provide intra-LATA

long distance and, accordingly, it has no interest in the rates charged for that service. The Commission, however, recognized that although AT & T did not provide intra-LATA long distance service at the time of the hearing, it had the ability to do so. AT & T's ability to offer such service supplies it sufficient interest to challenge any discrimination in intra-LATA rates. If AT & T had no personal stake in this particular issue, it was a proper party *in general* in the proceeding. "[O]nce the judicial machinery is in motion, any party should be allowed to argue for what he asserts to be desirable, including the interest of other private parties and the interest of the public." *City of Frisco v. Texas Water Rights Commission,* 579 S.W.2d 66, 69 (Tex.Civ.App.1979, writ ref'd n.r.e.). Furthermore, no one disputes the right of the OCCs to challenge intra-LATA toll rates and charges.

The local exchange carriers and SWB maintain that the Commission could exempt them from the access charge in the interest of protecting universal service. Appellees point out the Commission proclaimed that "[t]he preservation and promotion of universal service remains the paramount policy consideration of the Commission." Furthermore, the Commission found that "local flat rates on the average already recover more than half the NTS costs of the local exchange companies." From these findings, appellees conclude that local ratepayers are already paying more than their fair share of NTS costs, and the imposition of access charges on intra-LATA tolls would put too great a burden on local ratepayers and thereby thwart the goal of universal service. The argument is untenable.

"Basically, the universal service concept is founded on the concept that all subscribers to a telephone company's *basic service network* benefit when another person joins that network." *Texas Alarm, supra,* 603 S.W.2d at 770. (Emphasis supplied). Appellees are, in effect, contending that *intra-LATA tolls* must be kept low so that most customers will be able to use the service. The argument confuses toll service with local service. The Commission's order in docket no. 5113 makes clear that the protection of universal service required keeping *local* monthly rates low. The rates charged for local service are *independent* of those charged for toll service. For example, both customer X and customer Y pay a certain rate for local service. Making customer X pay a larger share of the NTS costs for a *toll* call because he uses an OCC does not keep the *local* rates of X and Y low. Instead, it merely allows Y, using SWB, to pay less for his toll call.

If we assume that the protection of universal service includes the maintenance of low rates for short-haul long distance calls, as well as purely local service, the Commission design is still unreasonable. By failing to reflect access charges in the rates of the customers of SWB and the local exchange carriers, the PUC order created a preferred class of inter-LATA toll customers. How are the concepts of universal service and competition served by cutting rates only for customers who use local exchange carriers' and SWB's intra-LATA service?

The appellees claim that since the OCCs have not paid their fair share of NTS costs in the past, it is reasonable to make them pay a larger portion now through access charges. Appellees' argument misses the point. It is true that the Commission found that the OCCs (not AT & T) had, in the past, received a free ride, not paying a contribution to NTS costs equal to the value and benefit they received from local access. AT & T and the OCCs do not dispute that finding. The question at issue, however, is not who was discriminated against under the old system, but who is discriminated against under the new Commission order.

The Commission found that, in the past, the OCCs had not contributed costs equal to the value of their unique use of the system as long distance carriers. And now, providing the same uniquely valuable service, it is the local exchange carriers and SWB who are receiving the preferential rate. Past discrimination in favor of the OCCs is no justification for present violations of PURA §§ 38, 45, and 47.

Some of the appellees suggest that since the local exchange carriers and SWB are not allowed to provide inter-LATA service, they, then, are not similarly situated with AT & T and the OCCs. The relevant service, however, is *intra-LATA*, not inter-LATA.

Finally, the appellees suggest that the local exchange carriers and SWB are regulated and are by law required to maintain local exchange service and must serve all customers. Accordingly, appellees claim, they are dissimilar to the unregulated OCCs. (AT & T is admittedly regulated). One problem with this positon is that the Commission made no findings arguably similar to those embodied in appellees' argument. Moreover, the relevant comparison is intra-LATA toll service, not local service. Given the dissimilarity, appellees have not shown why the dissimilarity presents a substantial and reasonable ground for treating the parties differently in the intra-LATA market.

In sum, because the Commission's preferential treatment of appellees is not founded upon a substantial and reasonable ground of distinction, *Amtel, supra,* 687 S.W.2d at 102, the judgments affirming the Commission's orders are reversed. The district court is directed to remand the causes to the Commission for further proceedings consistent with this Court's opinion.