# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00569-CV

City of Abilene, Texas; City of San Angelo, Texas; and City of Vernon, Texas, Appellants

v.

Public Utility Commission of Texas and West Texas Utilities Company, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. GV200052, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The cities of Abilene, San Angelo, and Vernon (collectively, ACities@) appeal a district court judgment upholding a Public Utility Commission order approving West Texas Utilities Company=s (AWTU@) application for approval of unbundled cost of service rates. In two points of error, the Cities specifically oppose that part of the order imposing an eighty percent demand ratchet for transmission and distribution rates on municipal water pumping customers. The Cities contend that the demand ratchet unreasonably discriminates against municipal water pumping customers because they are similarly situated to seasonal agricultural customers, who received the exemption. The Cities further

contend that the Commission≈s failure to grant the exemption to municipal water pumping customers was arbitrary and capricious. For the reasons stated below, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, the legislature amended the Public Utility Regulatory Act (APURA@)[1] to establish competition in the retail market for electricity, beginning January 1, 2002. It enacted chapter 39 of PURA Ato protect the public interest during the transition to and in the establishment of a fully competitive electric power industry.@ Tex. Util. Code Ann. ' 39.001(a) (West Supp. 2003). As part of the utility industry deregulation, the legislature created a statutory scheme whereby the regulated utility industry would be separated or Aunbundled@ into three distinct entities: (1) power generation companies; (2) retail electric providers; and (3) transmission and distribution utilities. *Id.* ' 39.051 (West Supp. 2003). This case concerns WTU≈s transmission and distribution rates.

---

[1] Tex. Util. Code Ann. '' 11.001-64.158 (West 1998 & Supp. 2003).

Utilities, including WTU, submitted applications for approval of unbundled costs of service, with the Commission still regulating the transmission and distribution rates. *In re TXU Elec. Co.*, 67 S.W.3d 130, 132 (Tex. 2001) (ABecause the generating companies and retail electric providers must use the existing power lines to move electricity from the plant to the retail customer . . ., the transmission and delivery companies . . . remain regulated monopolies.@). With some transmission and distribution rate issues common to all of the applications, the Commission held a proceeding to determine the common issues (Ageneric proceeding@) and issued an interim order establishing customer classifications and rate designs for all transmission and distribution rates.[2] Included in the order was a provision imposing an eighty percent demand ratchet[3] on transmission and distribution

---

[2] Tex. Pub. Util. Comm=n, *Generic Issues Associated with Applications for Approval of Unbundled Cost of Service Rate Pursuant to PURA ' 39.201 and Public Utility Commission Substantive Rule ' 25.344*, Docket No. 23444 (Nov. 22, 2000) (interim order establishing generic customer classification and rate design).

[3] ADemand@ is instantaneous energy usage. Utilities charge most customers on a monthly basis, but customers using larger amounts of electricity may have meters that track use every fifteen or thirty minutes. Under the eighty percent demand ratchet, the utility bases the customer=s transmission and distribution billing rate on the greater of current monthly demand or eighty percent of the customer=s monthly demand for the

rates for customers with electric meters that tracked demand. The order exempted seasonal agricultural customers from the demand ratchet based on evidence that the ratchet would overburden cotton ginners, because they operated only sixty to ninety days per year and used very little electricity for the rest of the year.[4]

preceding eleven months.

[4] Because cotton ginners were the only seasonal agricultural customers in the proceeding, for clarity and brevity we will refer to them as Acotton ginners.@

The Commission denied other customers= applications for exemption from the demand ratchet and determined that it would consider their applications in the utilities= individual ratemaking proceedings. The Commission would consider exemptions to the generic rate design Aonly if necessary to address extraordinary impacts on the ability of customers to obtain service from a competitive provider due to the restrictions of the price to beat (i.e., >headroom= concerns).@[5] The order went on to state that Abecause the transmission and distribution rates . . . represent a relatively small proportion of an end-use customer=s bill, the design of such rates shall be amended only in the case of exceptional headroom concerns. Such headroom concerns should not automatically mandate the granting of an exception to the generic rate design.@

The Cities, who were customers of WTU and other utilities, sought an exemption from the demand ratchet in WTU=s individual ratemaking proceeding (AWTU proceeding@).[6] The Cities= basis for entitlement to the exemption was that the municipal water pumping customers= variable electrical demand was similar to the cotton ginners= variable demands. Imposing a demand

---

[5] AHeadroom@ refers to the margin between the Aprice to beat@ and the new retailer=s costs of providing electricity. From January 1, 2002 until January 1, 2007, electric providers formerly affiliated with regulated utilities must provide electricity at rates that are six percent lower than their rates before deregulation. This rate is known as the Aprice to beat.@ *See* Tex. Util. Code Ann. ' 39.202 (West Supp. 2003). In enacting the price-to-beat statute, the legislature intended for new retail electric providers not affiliated with the regulated utility industry to enter the market and compete for customers with affiliated retail electric providers, those that were formerly part of the bundled utility companies. Thus, the greater the headroom, the more a customer may take advantage of competitive rates.

[6] Tex. Pub. Util. Comm=n, *Application of West Texas Utilities Company for Approval of Unbundled Cost of Service Rate Pursuant to PURA ' 39.201 and Public Utility Commission Substantive Rule ' 25.344*, Docket No. 23544 (Oct. 24, 2001) (final order establishing WTU=s unbundled cost of service rate).

ratchet on this variable demand would cause lower headroom, putting the municipal water pumping customers at a disadvantage in seeking competitive electrical rates. The Commission determined that it would not expand the demand ratchet exemption to include municipal water pumping customers because the expansion Ais not warranted on the basis of extraordinary headroom concerns.@

The Cities sought review of the WTU proceeding order in a Travis County district court, which affirmed the Commission=s order. In two points of error, the Cities appeal the judgment of the district court. They contend in their first point of error that the Commission=s unequal rate treatment of cotton ginners and municipal water pumping customers constitutes unreasonable discrimination in ratemaking, in violation of PURA section 36.003. *See* Tex. Util. Code Ann. ' 36.003(c) (West 1998) (a utility may not grant an Aunreasonable preference or advantage concerning rates@ or Asubject a person in a classification to an unreasonable prejudice or disadvantage concerning rates@). They contend in their second point of error that the Commission acted arbitrarily and capriciously by applying a Adifferent, vague standard@ to municipal water pumping customers than the standard applied to the cotton ginners.

## STANDARD OF REVIEW

The parties disagree about which standard of review applies. The Cities urge that we apply an arbitrary and capricious standard of review. The Commission and WTU contend that we are required to apply a substantial evidence standard of review. Both assertions are correct in part because the Cities= two points of error require different standards of review.

In their first point of error, the Cities contend that the Commission failed to identify substantial differences between municipal water pumping customers and cotton ginners to justify

**6**

disparate rate treatment and thus that the Commission unreasonably discriminated against the municipal water pumping customers. In other words, the Cities assert that substantial evidence does not support the Commission=s decision in the WTU proceeding not to grant an exemption to the municipal water pumping customers. Therefore, we will review the Cities= unreasonable discrimination challenge under a substantial evidence standard of review.[7]

We must uphold an agency action unless we find, among other factors, that the action is A[n]ot reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole@ *or* is Aarbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.@ Tex. Gov=t Code Ann. ' 2001.174(2)(e), (f) (West 2000). Under substantial evidence review, we may not substitute our judgment as to the weight of the evidence for that of the agency. *Texas Health Facilities Comm=n v. Charter Med.BDallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). We must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached to take the disputed action. *Texas State Bd. of Dental Exam=rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988); *Ramirez v. Texas State Bd. of Med. Exam=rs*, 995 S.W.2d 915, 919 (Tex. App.CAustin 1999, pet. denied). The test is not whether the agency made the correct conclusion but whether some reasonable basis exists in the record for the agency=s action. *Railroad Comm=n v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 41 (Tex. 1991);

---

[7] We also note that the Cities appealed the Commission=s order pursuant to PURA section 15.001, which states that A[a]ny party to a proceeding before the commission is entitled to judicial review under the *substantial evidence rule*.@ Tex. Util. Code Ann. ' 15.001 (West 1998) (emphasis added).

*Charter Med.BDallas, Inc.*, 665 S.W.2d at 452. Nevertheless, even after applying a substantial evidence standard of review, we must ensure that the actions of the Commission were not arbitrary and capricious. Agency decisions not supported by substantial evidence are deemed to be arbitrary and capricious. *Charter Med.BDallas, Inc.*, 665 S.W.2d at 454.

In their second point of error, the Cities contend that the Commission arbitrarily and capriciously applied a different, vague standard in denying an exemption to the municipal water pumping customers. We will thus evaluate the Cities= second point of error under an arbitrary and capricious standard of review, which is limited and deferential. *Pedernales Elec. Co-op., Inc. v. Public Util. Comm=n*, 809 S.W.2d 332, 338 (Tex. App.CAustin 1991, no writ). Examples of Commission conduct found to be arbitrary and capricious include: basing a decision on legally irrelevant factors or failing to consider statutorily-mandated relevant factors in making an agency=s decision, *Consumers Water, Inc. v. Public Utility Commission*, 774 S.W.2d 719, 721 (Tex. App.CAustin 1989, no writ); granting a certificate of service to a public utility for a reason other than the statutorily defined reasons, *Public Utility Commission v. South Plains Electric Cooperative, Inc.*, 635 S.W.2d 954, 957 (Tex. App.CAustin 1982, writ ref=d n.r.e.); in denying a permit, relying on additional requirements Aneither expected by [the applicant] nor proposed by the Board=s staff,@ *Starr County v. Starr Industrial Services, Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.CAustin 1979, writ ref=d n.r.e.).

## ANALYSIS

In their first point of error, the Cities contend that the Commission, in violation of PURA, unreasonably discriminated against municipal water pumping customers in the WTU

proceeding by not granting to them the same demand ratchet exemption that the cotton ginners received. Through PURA, the Commission Ahas broad powers and discretion in regulating public utilities.@ *Public Util. Comm=n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 409 (Tex. 1995). The Commission=s construction of PURA is entitled to great weight as long as it does not contradict the plain language of the statute. *El Paso Elec. Co. v. Public Util. Comm=n*, 917 S.W.2d 846, 856 (Tex. App.CAustin 1995, writ dism=d by agr.).

PURA gives the Commission the authority to set transmission and distribution utility rates. *See* Tex. Util. Code Ann. ' 39.201 (West Supp. 2003). In setting these rates, the Commission may not

> (1) grant an unreasonable preference or advantage concerning rates to a person in a classification;
>
> (2) subject a person in a classification to an unreasonable prejudice or disadvantage concerning rates; or
>
> (3) establish or maintain an unreasonable difference concerning rates between localities or between classes of service.

*Id.* ' 36.003(c); *see Amtel Communications, Inc. v. Public Util. Comm=n*, 687 S.W.2d 95, 101 (Tex. App.CAustin 1985, no writ). Some differentiation in treatment may be warranted in some circumstances. *See City of El Paso v. Public Util. Comm=n*, 839 S.W.2d 895, 932-33 (Tex. App.CAustin 1992), *aff=d in part, rev=d in part on other grounds*, 883 S.W.2d 179 (Tex. 1994) (Commission=s assignment of university to a different rate class than city and county not an abuse of discretion, because university failed to prove similar load characteristics). In those instances, unequal treatment neither violates PURA nor invalidates an agency action. *Amtel*, 687 S.W.2d at 101. The burden of proving unreasonable

discrimination is on the party asserting the claim. *AT & T Communications of the Southwest, Inc. v. Public Util. Comm=n*, 906 S.W.2d 209, 213-14 n.7 (Tex. App.CAustin 1995, writ denied). It is not enough for a claimant to show that the difference in rates results in unequal treatment. *Amtel*, 687 S.W.2d at 103.

If the Commission sets different rates for customers who are similarly situated, it must base its disparate treatment on substantial and reasonable differences between the customers. *AT & T Communications*, 906 S.W.2d at 213-14 n.7; *Amtel*, 687 S.W.2d at 102. Factors for distinctions between customers include quantity of service received, different characteristics of service, time of use, Aor any other matter which presents a substantial difference as a ground of distinction.@ *Amtel*, 687 S.W.2d at 102 (quoting *Caldwell v. City of Abilene*, 260 S.W.2d 712, 714 (Tex. Civ. App.CEastland 1953, writ ref=d)). Whether the differences are reasonable is a fact determination, and the burden of proof is on the complaining party. *Id.* (citing *Ford v. Rio Grande Valley Gas Co.*, 174 S.W.2d 479, 480 (Tex. 1943)).

The Cities do not challenge the eighty percent demand ratchet or the Commission=s grant of an exemption from the ratchet to the cotton ginners in the generic proceeding. The Cities instead urge that, based on WTU data concerning electrical demands and headroom, the municipal water pumping customers deserve the same exemption in the WTU proceeding because they are similarly situated to the cotton ginners. They then contend that the Commission=s unequal rate treatment of the two groups was unjustified because the Commission failed to identify substantial differences between the groups. We disagree. Even assuming that the groups are similarly situated, we find substantial evidence of a Asubstantial and reasonable difference@ between the groups, which justifies the unequal rate treatment.

**10**

We begin by dismissing the Cities=claim that, because they are in the same customer classification, the municipal water pumping customers should receive the same treatment as cotton ginners. To the contrary, utility rates may vary within a classification of customers if the variations are reasonable. *See* Tex. Util. Code Ann. ' 36.003(c)(1); *Amtel*, 687 S.W.2d at 101-02.

The Cities contend that the similarities in demand data demonstrate that the cotton ginners and municipal water pumpers are similarly situated. For example, the cotton ginners=expert witness testified that the demand ratchet would double or triple cotton ginners=transmission and distribution rates. Imposing a demand ratchet on the cotton ginners would result Ain a complete loss of headroom@ and deprive them Aof the benefits of competition.@ The Cities=expert witness testified similarly that A[c]ustomers with demands that vary month to month will experience an increase in the demand for which they are billed@; one municipal water pumping customerCwhich Amay be an extreme example@Cwould pay 870 percent more for transmission and distribution rates with the imposition of an 80 percent demand ratchet. The demand ratchet would thus result in a 414 percent billing demand increase in WTU=s transmission and distribution rates for municipal water pumping customers.

But the records in both the generic proceeding and the WTU proceeding show a substantial and reasonable difference between the two groups of customers. It is undisputed that the cotton ginners use large amounts of electricity for sixty to ninety days per year, with little or no use for the rest of the year. The principal cause of their rate increase would be demand-based billing for partial months of high demand or months in which they had little or no electrical demand. On the

other hand, although the water pumpers= electrical demand fluctuates somewhat, especially during dry summers, they have large electrical demand throughout the year.

The goal of the generic proceeding was to establish generic transmission and distribution rates, with Auniform rate designs and customer classifications . . . appropriate and necessary to achieve this goal.@ Therefore, a customer had to demonstrate Aextraordinary headroom concerns@ to be exempt from the uniform rate design.  But demonstration of reduced headroom does not Aautomatically mandate the granting of an exception.@  In determining whether to grant an exemption from the uniform rates, the Commission could compare a variety of distinctions between the customers, including differences in the time of use Aor any other matter which presents a substantial difference as a ground of distinction.@ *Amtel*, 687 S.W.2d at 102 (quoting *Caldwell*, 260 S.W.2d at 714). In the generic proceeding, the Commission determined that because the cotton ginners= time of use would be only for sixty to ninety days per year, the demand ratchet would unfairly bill cotton ginners for partial months of high demand or for months when they had little or no electrical demand.  The municipal water pumping customers did not demonstrate such unique circumstances in the WTU proceeding, instead showing that they had higher electrical demand in the summer but not the extreme fluctuations in demand that the cotton ginners demonstrated.  WTU=s expert testified that because utilities base rate designs Aon an average basis,@ customers with variable demands will more likely experience headroom concerns.  The Commission gave notice to the Cities in the generic proceeding that merely showing headroom concerns would not Aautomatically mandate the granting of an exception.@

The Commission could have reasonably held that high electrical demand for only sixty to ninety days as compared with fluctuating electrical demand throughout the year qualifies as a Asubstantial and reasonable@ difference that justifies disparate rate treatment. *Id.* The Commission=s decision in the WTU proceeding not to exempt municipal water pumping customers from the demand ratchet was not an Aunreasonable preference or advantage concerning rates@ to the cotton ginners. Tex. Util. Code Ann. ' 36.003. Therefore, we overrule the Cities= first point of error.

In their second point of error, the Cities assert that the Commission arbitrarily and capriciously applied a different, vague standard to the municipal water pumping customers= request for an exemption from the demand ratchet. Under this limited and deferential standard of review, we find that the Commission did not act arbitrarily or capriciously. *See Pedernales Elec. Co-op.*, 809 S.W.2d at 338. PURA grants the Commission considerable discretion in deciding rate design issues. *Texas Alarm & Signal Ass=n v. Public Util. Comm=n*, 603 S.W.2d 766, 772 (Tex. 1980). As long as the Commission addresses the rate considerations set forth in PURA, the particular factors and the weight to be given those factors are within the Commission=s discretion. *Id.* at 772-73; *AT & T Communications*, 777 S.W.2d at 366. Under PURA section 39.003, the Commission may set differing rates as long as the rates are not unreasonably discriminatory. *See Texas Alarm & Signal*, 603 S.W.2d at 770. Further, the Commission may consider a variety of factors in making rate design decisions. *See id.* at 772.

The Cities focus on the similarity of electrical demands and headroom concerns, arguing that these similarities require the Commission to grant municipal water pumping customers the same demand ratchet exemption that the cotton ginners received. But the Commission granted an exemption to the cotton ginners because they had Ahighly variable usage patterns within the year@

which were Aunique.@[8]  The municipal water pumping customers= constant demand throughout the year, albeit with an increased demand in the summer, did not equate with the cotton ginners= large electrical demands for a short period, followed by months of little or no demand.

The Cities further contend that Aextraordinary headroom concerns@ was a new standard, applied after the cotton ginners received an exemption.  The cotton ginners demonstrated extraordinary headroom concerns in the generic proceeding, and we find no evidence in the record that the Commission applied a Adifferent, vague standard@ to the municipal water pumping customers in the WTU proceeding.  The Commission followed the rate considerations set forth in PURA and acted within its considerable discretion in granting the exemption only to the cotton ginners.  *Texas Alarm & Signal*, 603 S.W.2d at 772-73; *AT & T Communications*, 777 S.W.2d at 366.  Therefore, we hold that the Commission did not act arbitrarily or capriciously in its determination that a demand ratchet exemption for the municipal water pumping customers was Anot warranted on the basis of extraordinary headroom concerns.@  We overrule the Cities= second point of error.

## CONCLUSION

We hold that the Commission=s decision in the WTU proceeding not to expand the eighty percent demand ratchet exemption for seasonal agricultural customers to include municipal water pumping customers was not an Aunreasonable preference or advantage concerning rates.@  Tex.

---

**8** The principal definition of Aunique@ is Athe only one,@ synonymous with Asole.@ *Webster=s Third New International Dictionary* 2500 (1986).

Util. Code Ann. ' 36.003.  The Commission grounded its decision in a Asubstantial and reasonable@ difference between the two customers and thus did not unreasonably discriminate against the municipal water pumping customers.  *Amtel*, 687 S.W.2d at 102.  We further hold that the Commission, by following the rate considerations set forth in PURA, did not act in an arbitrary and capricious manner in granting the exemption to one customer but not another.  Having overruled the Cities= points of error, we affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   February 27, 2003